IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

**DANIEL R. SHERZER** and
**GERALDINE SHERZER**
        **Plaintiffs**                                      : **CIVIL ACTION**


        v.


**HOMESTAR MORTGAGE SERVICES,**
**HSBC BANK USA,**
**DANA CAPITAL GROUP, INC.**
**THE CIT GROUP/CONSUMER FINANCE, INC.**
**and MERCURY MORTGAGE PARTNERS**
        **Defendants**                                     : **07-CV-**


## COMPLAINT

1. This is an action seeking damages, a declaration of rescission, and remedies for rescission under the federal Truth-in-Lending Act, 15 U.S.C. § 1601, et seq. ("the TILA") and pendant state law against the original lenders, the current mortgage holders, and the mortgage brokers in two separate predatory loan transactions in which the Plaintiffs residence was used as security.


2. Jurisdiction of this court to hear this proceeding is conferred by 15 U.S.C. § 1640(e).


3. The Plaintiffs are DANIEL R. SHERZER and GERALDINE SHERZER, married adult individuals residing at 320 Rosemary Lane, Narberth, PA 19072 ("the Home").


4. The Defendants are (1) HOMESTAR MORTGAGE SERVICES ("Homestar"), an entity which is not listed with the Pennsylvania Department of State but which lists the address of P.O. Box 200010-9246, Kennesaw, GA, 30156 on the loan documents at issue, the original lender in the transaction of August 26, 2004 ("the 2004 loan"), at issue in this case in which first and second mortgages were taken against the Home; (2) HSBC BANK USA, ("HSBC"), a Foreign Business Corporation the entity number of which is 2933601 and which lists the address of C/o CT Corporations System, 1515 Market St., Suite 1210, Philadelphia, PA 19102, with the Pennsylvania Department of State, the entity which has indicted the first loan in the 2004 loan in question was assigned to; (3) DANA CAPITAL GROUP, INC. ("DANA"), a Foreign Business Corporation the entity number of which is 2922900, and which lists the address of C/o CT Corporations System, 1515 Market St.,

1

Suite 1210, Philadelphia, PA 19102 with the Pennsylvania Department of State, the broker involved in the 2004 loan; (4) THE CIT GROUP/CONSUMER FINANCE, INC. ("CIT"), a Foreign Business Corporation the entity number of which is 2120254 and which lists the address of C/o , CT Corporations System, 1515 Market St., Suite 1210, Philadelphia, PA 19102, with the Pennsylvania Department of State, the lender in a refinancing transaction of August 26, 2005 ("the 2005 loan"), which refinanced the second loan originally funded by Homestar; and (5) MERCURY MORTGAGE PARTNERS ("Mercury"), the fictitious name of an entity the number of which is 3127044, and which lists the address of 2949 W. Livingston St., Allentown, PA 18104, with the Pennsylvania Department of State, the broker involved in the 2005 loan which refinanced the second mortgage on the Home.

5.  The Plaintiffs entered into the original 2004 loan on August 26, 2004, with the intent of refinancing two previous loans held by Washington Mutual Bank and Greenpoint Mortgage into one loan.

6.  In the course of communications to consummate the 2004 loan refinancing, the Plaintiffs fully informed DANA and Homestar, who knew or should have known of the status of the Plaintiffs' prior loans, of the existence and status of the Plaintiffs' outstanding loans and sent them certain documentation of their income and debt status. As is standard practice in the industry, the Plaintiffs prior mortgage originator had required the Plaintiffs to purchase title insurance on the Home as a condition of their previous loan, and this fact was known to employees of DANA, Homestar, and Landtech Abstract, Inc. ("Landtech"), the entity which is identified on the Settlement Statement as having purchased said insurance.

7.  The settlement transpired when the Plaintiffs appeared at the offices of Landtech, the agent for which asked the Plaintiffs to sign a large number of documents the contents of which were not explained to them. To this affect, the Plaintiffs did not realize until after settlement that the loan documents which they signed obligated them to pay on two separate loans, the larger of which contains a variable interest rate feature, at interest rates and loan amounts far above which the Plaintiffs had been previously advised of and for which they had not been provided the disclosures and booklets identifying this variable rate and the computations relative to same which must be provided to borrowers in advance of settlement pursuant to 2 C.F.R. § 226.19(b).

8.  Among the documents which the Plaintiffs received to memorialize the first, larger loan in this transaction were a Truth-in-Lending Disclosure Statement ("DS"), a Settlement Statement ("SS"), and Notices of Right to Cancel ("the Notices"), representing the larger and smaller of the two loans entered into by the Plaintiffs, copies of the aforementioned documents with respect to the larger first loan are attached hereto as Exhibits "A," "B," and "C," respectively.

9. A significant aspect of this transaction is that it was split into two loans. The Plaintiffs expected to receive one loan, as was indicated, secured by a mortgage and were not informed that the instant transaction would result in their receiving two loans. Since this was a single transaction which involved "loan splitting," the Plaintiffs were entitled to full TILA disclosures which described the entire loan package. However, these disclosures were also not provided.

10. Moreover, it appears that numerous charges imposed upon the Plaintiffs in connection with the 2004 loan transaction should have been included as part of the Finance Charge disclosed, but were not. Noteworthy is that the pertinent charges included a charge of $3076.20 for title insurance, which exceeds the applicable "refinance rate," as the Plaintiffs were refinancing loans made in 2003, established by the applicable Manual of Title Insurance Rating Bureau of Pennsylvania by $461.70. Therefore, the title insurance charges, or at least the excess charges, were not "reasonable in amount" and were required to be included in the "finance charge" disclosed in this transaction. Furthermore, the Plaintiffs were charged the exorbitant amount of $825.00 for an appraisal, a notary fee of $15.00 although state law, 57 P.S. § 167, restricts such charges to $2.00, various charges by Homestar totaling $112.00, and various charges by Landtech totaling $419.50. Additionally, another violation arises from the fact that DANA received not only compensation which is specifically itemized in the Settlement Statement from the second, smaller loan, but also received a fee paid by the lender of $8,820.00 which was otherwise undisclosed to the Plaintiffs. While this charge is characterized as being paid by the lender to the broker on the SS, it is identified as a Yield Spread Premium which is a charge used by those in the mortgage lending industry to disguise additional compensation paid indirectly by borrowers and received by a broker, as it is in actuality a kick-back that the broker receives for producing a borrower who will pay an interest rate higher then that which the borrowers would have qualified for, as the charge is indirectly paid for by the borrowers through their increased interest rate. Not only is this charge nefarious on its own, it was never mentioned to the Plaintiffs in their negotiations of Dana's charges for its services. When these and all other charges are analyzed, it is clear that charges properly characterized as part of the Finance Charge in this transaction have only been partially disclosed as such, if at all, which renders the disclosure of the Finance Charge and Annual Percentage Rate of the Finance Charge on the Truth-in-Lending Disclosure Statements which the Plaintiffs received erroneous, which are material violations of the TILA.

11. On or about May 11, 2007, having undertaken to represent the Plaintiffs, the undersigned forwarded a letter to HSBC and Homestar indicating that the Plaintiffs were exercising their right to rescind the loan agreements pursuant to material violations of the TILA, a copy of which is attached hereto as Exhibit "D." Moreover, this letter constituted a qualified written request ("QWR") under the Real Estate Settlement Procedures Act, 12

3

U.S.C. 2605(5)(e) ("RESPA"), requesting certain information relative to the underlying loan.

12. After receiving various responses to the Plaintiffs rescission demand and QWR from counsel for HSBC, the Plaintiffs received the letter of July 3, 2007, a copy of which is attached hereto as Exhibit "E." In that letter, HSBC indicates that it will honor the Plaintiffs' demand to rescind the second smaller loan, but that the Plaintiffs' "have no right to rescind the first loan" thereafter denying the Plaintiffs' rescission demand.

13. After consummation of the first refinancing at issue, the 2004 loan, on or about August 26, 2005, the Plaintiffs entered into a transaction with CIT in order to refinance the aforementioned second, smaller loan ("the 2005 loan").

14. As was the case in the 2004 loan, in the course of communications to consummate the 2005 loan refinancing, the Plaintiffs fully informed Mercury and CIT, who knew or should have known of the status of the Plaintiffs' prior loans, of the existence and status of the Plaintiffs' outstanding loans and sent them certain documentation of their income and debt status. As is standard practice in the industry, the Plaintiffs prior mortgage originator had required the Plaintiffs to purchase title insurance on the Home as a condition of their previous loan, and this fact was known to employees of Mercury, CIT, and Great Valley Abstract ("GVA"), the entity which is identified on the Settlement Statement as having purchased said insurance.

15. Among the documents which the Plaintiffs received to memorialize the 2005 loan transaction were a Truth-in-Lending Disclosure Statement ("DS"), a Settlement Statement ("SS"), and Notices of Right to Cancel ("the Notices"), copies of which are attached hereto as Exhibits "F," "G," and "H," respectively. However, a review of the documents received by the Plaintiffs in this transaction reveals that the Plaintiffs only received two copies of the Notice, and because there were two parties to whom two disclosures were required, their should have been a total of four copies among their loan documents. This failure to provide the proper number of Notices constitutes a "material violation" of the TILA.

16. Further, it appears that several charges imposed upon the Plaintiffs in connection with this loan too should have been included as part of the finance charge disclosed to the Plaintiffs in connection with the 2005 loan, but were not. Like the 2004 loan, in the 2005 loan, the Plaintiffs were charged $1,118.70 for title insurance which again exceeds the applicable "refinance rate" established by the applicable Manual of Title Insurance Rating Bureau of Pennsylvania. Furthermore, the Plaintiffs were again also charged an excessive notary fee

4

of $25.00 although state law restricts such charges to $2.00, various charges were imposed by CIT totaling $800.00, charges by Great Valley Abstract totaled $418.00, a "mortgage applicable fee" was imposed by an entity unknown to the Plaintiffs identified as Transamerica, and a "flood certification fee" was imposed by another entity unknown to the Plaintiffs identified as American Flood Data Services, Inc. Additionally, a further violation arises from the fact that the broker, Mercury, received not only compensation of $2,390.00 from the Plaintiffs, but also received a fee paid by the lender of $2,353.91 which was otherwise undisclosed to the Plaintiffs. While this charge is characterized as being paid by the lender to the broker on the SS, it is identified as a second "Mortgage Broker Fee" but which is also believed to be a Yield Spread Premium. Again, as in the 2004 loan, this fee was never mentioned to the Plaintiffs in their negotiations with Mercury of its charges for its services. When these and all other charges are analyzed, it is clear that charges properly characterized as part of the Finance Charge in this transaction have only been partially disclosed as such, if at all, which renders the disclosure of the Finance Charge and Annual Percentage Rate of the Finance Charge on the Truth-in-Lending Disclosure Statements which the Plaintiffs received erroneous, which are material violations of the TILA.

17. On or about May 11, 2007, having undertaken to represent the Plaintiffs, the undersigned forwarded a letter to CIT indicating that the Plaintiffs were exercising their right to rescind the loan agreements pursuant to material violations of the TILA, a copy of which is attached hereto as Exhibit "I." Moreover, this letter constituted a qualified written request ("QWR") under the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(5)(e) ("RESPA"), requesting certain information relative to the underlying loan.

18. Thereafter, the Plaintiffs received a letter of September 7, 2007, a copy of which is attached hereto as Exhibit "J." In that letter, HSBC indicates that it will deny the Plaintiffs' demand to rescind regarding the 2005 loan, indicating that "there was no violation of the Truth-in-Lending Act..."

## COUNT ONE
### (Homestar, HSBC, and CIT)

19. The allegations of paragraphs 1 through 18 are incorporated herein by reference.

20. The transactions described herein were closed-end consumer financing transactions to refinance the Plaintiffs' residential mortgages, which are within the scope of the TILA.

21. The misrepresentations in the 2004 loan resulting in two separate loans secured by the Home and the misrepresentations regarding the features of the loans, the underdisclosed finance charges and all of the other aforementioned violations in connection with same constitute material violations of the TILA which entitle the Plaintiffs to rescind the above mentioned loan transactions pursuant to the TILA.

22. Likewise, the misrepresentations in the 2005 loan, the failure to provide the requisite copies of the Notice, and CIT's misrepresentation of the loan terms and failure to adequately disclose certain terms of the transaction, particularly the finance charges and the annual percentage rate, also constitute "material" disclosure violations which entitled the Plaintiffs to rescind the 2005 loan transaction.

23. Moreover, The Plaintiffs did not receive accurate disclosures of the terms of these transactions as required by the TILA, including, but not limited to, the actual "Finance Charge" in the transactions, in violation of 15 U.S.C. § 1638(a), as the Finance Charges as disclosed omit the many of the charges and excessive charges referenced in paragraph 10 and 16 supra which renders the disclosures of the Finance Charges and Annual Percentage Rates of the Finance Charges erroneous, which are also material violations of the TILA entitling the Plaintiffs to rescind the instant loan transactions.

24. Finally, the failure to provide the Plaintiffs with variable rate disclosures in the 2004 loan and the failure to provide disclosures reflecting that transaction as a whole notwithstanding the violative loan splitting constitute material violations the TILA entitling the Plaintiffs to rescind the 2004 loan.

WHEREFORE, the Plaintiffs request that the holders of the mortgages, believed to be HSBC and CIT in the 2004 loan and 2005 loan respectively, be ordered to satisfy their respective security interests in the Home, desist form making any claim for finance charges arising out of this transaction, and that all the Defendants return all of the Plaintiffs' payments and be barred from making any claim for payments against the Plaintiffs, and that the entities holding the mortgages at any time be deemed liable jointly and severally to the Plaintiffs for statutory damages of $2000 and the undersigned's reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1635(b), 1640(a)(2)(A)(i), and 1640(a)(3) of the TILA.

## COUNT TWO
### (All Defendants)

25. All of the allegations of paragraphs 1 through 24 are incorporated herein by reference.

26. By their roles in arranging these transactions to the detriment of the Plaintiffs and the benefit of themselves, and misrepresenting the terms of this loan and its charges, which terms were material to the loan, and which its agents knew were unreasonable, DANA and Mercury have engaged in common-law fraud, have breached their fiduciary duties to the Plaintiffs as their purported agents, and has thereby violated the Pennsylvania Credit Services Act, 73 Pa.C.S. § 2183(3), (4), 2184, 2185, and 2186 ("the CSA") rendering them liable for the statutory damages provided in 73 P.S. § 2191; and have violated the Pennsylvania Loan Broker Trade Practices Regulations ("the LBTP"), 37 PA. CODE §§ 305.3(a)(1) through (a)(4).

27. The failure of Homestar, HSBC and CIT to rectify the wrongful actions of Dana and Mercury after same have been brought to their attention renders the above referenced lenders subject to all of these claims as well.

   WHEREFORE, the Plaintiffs request that all Defendants be determined to be liable to the Plaintiffs, jointly and severally, for statutory damages plus punitive damages, reasonable attorneys' fees for the Plaintiffs' counsel, and any costs pursuant to 73 P.S. § 2191 and other applicable laws cited.

## COUNT THREE
### (All Defendants)

28. All of the allegations of paragraphs 1 though 27 are incorporated herein by reference.

29. The Defendants, having collaborated to violate the TILA and CSA in these transactions, have engaged in a concerted plan to purport to provide financial services with an intent not to provide same as represented and to knowingly misrepresent that services such as were provided were needed when they were not needed, as well as engaging in fraudulent and deceptive conduct which was calculated to and did create confusion and misunderstanding in the mind of susceptible consumers such as the Plaintiffs and have violated the LBTP, in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. 201-1, et seq. ("the UTPCPL"), particularly 73 P.S. §§ 201-2(4)(v), (xv), and (xxi).

WHEREFORE, the Defendants are liable to the Plaintiffs, jointly and severally, for treble the amount of their actual damages, plus reasonable attorney's fees for the undersigned plus costs pursuant to 73 P.S. § 201-9.2(a) of the UTPCPL.

DAVID A. SCHOLL
6 St. Albans Avenue
Newtown Square, PA. 19073
(610)-353-7543
Attorney for Plaintiffs

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER OR LENDER'S AGENT:
Home Star Mortgage Services, LLC
W115 Century Road Paramus, NEW JERSEY 07652

☐ Preliminary  ☒ Final

DATE: 8/26/2004
LOAN NO.: 1701108127
Type of Loan: Conventional
55030A26I

BORROWERS: Daniel R. Sherzer, Geraldine Sherzer

ADDRESS: 320 Rosemary Lane                                          5.500%
CITY/STATE/ZIP: Narberth, PENNSYLVANIA 19072
PROPERTY: 320 Rosemary Lane, Narberth, PENNSYLVANIA 19072

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 5.2456 % | $ 796,496.76 | $ 699,737.18 | $ 1,496,233.94 |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE Monthly BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE Monthly BEGINNING |
|---|---|---|---|---|---|
| 24 | 3,234.00 | Oct 1st, 2004 | | | |
| 96 | 3,913.50 | Oct 1st, 2006 | | | |
| 239 | 4,705.51 | Oct 1st, 2014 | | | |
| 1 | 4,705.05 | Sep 1st, 2034 | | | |

DEMAND FEATURE:  ☒ This loan does not have a Demand Feature.   ☐ This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
☒ This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY:  You are giving a security interest in the property located at: 320 Rosemary Lane, Narberth, PENNSYLVANIA 19072

ASSUMPTION:  Someone buying this property  ☒ cannot assume the remaining balance due under original mortgage terms
☐ may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

FILING / RECORDING FEES:  $ 116.50

PROPERTY INSURANCE:  ☒ Property hazard insurance with a mortgagee clause to the lender is a required condition of this loan. Borrower may purchase this insurance from any insurance company acceptable to the lender.
Hazard insurance ☐ is  ☒ is not available through the lender at an estimated cost of $  $0.00  for a  0.00  year term.

LATE CHARGES:  If your payment is more than 15 days late, you will be charged a late charge of  5.000 % of the overdue payment.

PREPAYMENT:  If you pay off your loan early, you
☒ may  ☐ will not  have to pay a penalty.
☐ may  ☒ will not  be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding  non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.
e means estimate

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

| | | | |
|---|---|---|---|
| Daniel R. Sherzer | 8/26/2004 BORROWER / DATE | Geraldine Sherzer | 8/26/2004 BORROWER / DATE |
| | 8/26/2004 BORROWER / DATE | | 8/26/2004 BORROWER / DATE |

Ex "A"

## A. Settlement Statement

| B. Type of Loan | | | | | U.S. Department of Housing and Urban Development |
|---|---|---|---|---|---|
| 1. ☐FHA | 2. ☐FmHA | 3. ☐Conv. Unins. | 6. File Number | 7. Loan Number | OMB No. 2502-0265 REV. HUD-1 (3/86) |
| 4. ☐VA | 5. ☐Conv. Ins. | | LTA-3778 | | 8. Mortgage Insurance Case Number |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.
WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

TitleExpress Settlement Sy:
Printed 08/26/2004 at 17:54

| | |
|---|---|
| D. NAME OF BORROWER: | Daniel R. Sherzer and Geraldine Sherzer |
| ADDRESS: | 320 Rosemary Lane, Narberth, PA 19072 |
| E. NAME OF SELLER: | R E F I N A N C E |
| ADDRESS: | |
| F. NAME OF LENDER: | Homestar Mortgage Services |
| ADDRESS: | P.O. Box 200010-9246, Kennesaw, GA 30156 |
| G. PROPERTY ADDRESS: | 320 Rosemary Lane, Narberth, PA 19072 |
| | Lower Merion Township |
| H. SETTLEMENT AGENT: | Landtech Abstract, Inc., Telephone: 215-540-4445 Fax: 215-540-5607 |
| PLACE OF SETTLEMENT: | 1400 Union Meeting Road, Suite 200, Blue Bell, PA 19422 |
| I. SETTLEMENT DATE: | 08/26/2004    DISBURSEMENT DATE:    09/01/2004 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 15,123.28 | 403. | |
| 104. Payoff:9085301967239 | 372,163.38 | 404. | |
| Washington Mutual Bank, FA | | | |
| 105. Payoff:4800108525906 | 389,302.30 | 405. | |
| Green Point Mortgage | | | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 776,588.96 | 420. GROSS AMOUNT DUE TO SELLER | |
| 200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loans | 705,600.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. | |
| 205. Proceeds from Second | 168,611.84 | 505. | |
| Daniel R Sherzer and Geraldine | | | |
| 206. Appraisal Credit | 500.00 | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BORROWER | 874,711.84 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | |
| 300. CASH AT SETTLEMENT FROM OR TO BORROWER | | 600. CASH AT SETTLEMENT TO OR FROM SELLER | |
| 301. Gross amount due from borrower (line 120) | 776,588.96 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 874,711.84 | 602. Less reduction amount due seller (line 520) | |
| 303. CASH TO BORROWER | 98,122.88 | 603. CASH TO SELLER | 0.00 |

*Ex "B"*

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
## SETTLEMENT STATEMENT   REV. HUD-1 (3/86)

File Number: LTA-3778L

TitleExpress Settlement System  Printed 08/26/2004 at 17:54 AY

| L. SETTLEMENT CHARGES | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FRO SELLER' FUNDS A SETTLEME |
|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ = | | | |
| Division of commission (line 700) as follows: | | | |
| 701. $ to | | | |
| 702. $ to | | | |
| 703. Commission paid at Settlement | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee % | | | |
| 802. Loan Discount % | | | |
| 803. Appraisal Fee to DANA CAPITAL GROUP | (P.O.C.) 500.00 Buyer | | |
| 804. Credit Report | | 325.00 | |
| 805. | | | |
| 806. Flood Cert Fee to Homestar Mortgage Services | | | |
| 807. Lender Tax Service to Homestar Mortgage Services | LR | 10.00 | |
| 808. | LR | 67.00 | |
| 809. | | | |
| 810. Yield Spread Premium to DANA CAPITAL GROUP | $8,820.00 POC by Lender | | |
| 811. Lender Funding Fee to Homestar Mortgage Services | LR | 35.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest From 08/31/2004 to 09/01/2004 @$ 106.3200 /day 1 Days | LR | 106.32 | |
| 902. Mortgage Insurance Premium for to | | | |
| 903. Hazard Insurance Premium for to | | | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER FOR** | | | |
| 1001. Hazard Insurance mo. @ $ /mo | | | |
| 1002. Mortgage Insurance mo. @ $ /mo | | | |
| 1003. City Property Tax mo. @ $ /mo | | | |
| 1004. County Property Tax mo. @ $ /mo | | | |
| 1005. School Taxes mo. @ $ /mo | | | |
| 1009. Aggregate Analysis Adjustment | | 0.00 | 0 |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or closing fee | | | |
| 1102. Abstract or title search | | | |
| 1103. Title examination | | | |
| 1104. Title insurance binder | | | |
| 1105. Document Preparation | | | |
| 1106. Notary Fees to Landtech Abstract, Inc. | | 15.00 | |
| 1107. Attorney's fees | | | |
| (includes above items No: ) | | | |
| 1108. Title Insurance to Landtech Abstract, Inc. | | 3,076.20 | |
| (includes above items No: ) | | | |
| 1109. Lender's Policy 876,950.00 - 3,076.20 | | | |
| 1110. Owner's Policy | | | |
| 1111. End 100, End 300, End 900 to Landtech Abstract, Inc. | | 150.00 | |
| 1112. End 710 to Landtech Abstract, Inc. | | 50.00 | |
| 1113. ClosingSvcLtr to Landtech Abstract, Inc. | | 35.00 | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording Fees Deed $ ; Mortgage $ 116.50 ; Release $ | | 116.50 | |
| 1202. City/County tax/stamps Deed $ ; Mortgage $ | | | |
| 1203. State Tax/stamps Deed $ ; Mortgage $ | | | |
| 1204. | | | |
| 1205. | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Courier/Wire Fees to Landtech Abstract, Inc. | | 46.50 | |
| 1302. Tax Certification to Landtech Abstract, Inc. | | 55.00 | |
| 1303. Overnight Delivery Fees to Landtech Abstract, Inc. | | 31.00 | |
| 1304. Email Doc Fee to Landtech Abstract, Inc. | | 50.00 | |
| 1305. 2004 Twp/City Taxes to Tax Collector of Lower Merion | | 2,873.00 | |
| 1306. 2004 Sewer /Waste Tax to Tax Collector of Lower Merion | | 768.98 | |
| 1307. 2004-05 School Taxes to Tax Collector of Lower Merion | | 6,537.78 | |
| 1308. Other Disbursements (1520) | | 775.00 | |
| **1400. TOTAL SETTLEMENT CHARGES** (enter on lines 103, Section J and 502, Section K) | | 15,123.28 | |

HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____
Daniel R. Sherzer
201225430

_____
Geraldine Sherzer
143285335

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE TITLE 18: U.S. CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

By: _____

## NOTICE OF RIGHT TO CANCEL

LENDER: Home Star Mortgage Services, LLC

DATE  8/26/2004
LOAN NO.  1701108127
TYPE  55030A26I

BORROWERS/OWNERS Daniel R. Sherzer, Geraldine Sherzer

ADDRESS      320 Rosemary Lane
CITY/STATE/ZIP Narberth, PENNSYLVANIA 19072
PROPERTY     320 Rosemary Lane, Narberth, PENNSYLVANIA 19072 Montgomery

### YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1)   The date of the transaction, which is August 26, 2004           ; or
(2)   The date you received your Truth in Lending disclosures; or
(3)   The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Home Star Mortgage Services, LLC
W115 Century Road Paramus, NEW JERSEY 07652

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of  8/30/04
(or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

### I WISH TO CANCEL

_____        _____
SIGNATURE                                                        DATE

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal Truth in Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

_____  _____        _____  _____
BORROWER/OWNER                   DATE           BORROWER/OWNER                   DATE

_____  _____        _____  _____
BORROWER/OWNER                   DATE           BORROWER/OWNER                   DATE

VMP -64 (0010)                VMP MORTGAGE FORMS - (800)521-7291                    12/97

*Ex "C"*

# David A. Scholl

Counselors at law

Sent by Certified & Regular Mail

May 11, 2007

Opteum Financial Services
P.O. Box 77404
Ewing, NJ  08628

HSBC Bank USA, as Trustee
425 Phillips Boulevard
Ewing, NJ  08618

Homestar Mortgage Services
P.O. Box 200010-9246
Kennesaw, GA.  30156

Re:  Daniel R. & Geraldine Sherzer, Opteum Acct. No. 0115117930, Homestar File No. LTA-3778L

Dear Sirs and/or Mesdames:

  I represent Daniel R. and Geraldine Sherzer (collectively, "Sherzer"), husband and wife who own by the entireties their home located at 320 Rosemary Lane, Narberth, PA. 19072 ("the Home").  As a result of the transaction into which Sherzer entered with Homestar Mortgage Services ("Homestar") on August 26, 2004, Sherzer were provided with two loans from Homestar.  HSBC Bank USA ("HSBC") has commenced a Mortgage Foreclosure Action in the Court of Common Pleas of Montgomery County, Pennsylvania relating to the larger of the two loans, which remains pending at the present time.  We therefore believe that HSBC is presently the owner or holder of the mortgage and Opteum is the servicer.  Please consider this letter as, inter alia, a written request for the name, address, and telephone number of the owner of this obligation, pursuant to 15 U.S.C. section 1641(f)(2).

  This transaction refinanced two prior loans which Sherzer then had against the Home, held by Washington Mutual Bank and Greenpoint Mortgage.  We have reviewed the entire package of documents given to Sherzer in connection with this transaction, but we want to make certain that we have all relevant documents and information regarding this loan.  Please consider this letter as, inter alia, a **qualified written request** under the Real

---

REGIONAL BANKRUPTCY CENTER OF SOUTHEASTERN PA
David A. Scholl, Esq., Chief Counsel & CEO
#6 ST. Albans Ave, Newtown SQ., PA 19073
610-353-7543  610-353-7542
www.judgescholl@redemptionlawcenter.com

*Ex "A"*

Estate Settlement Procedures Act 12 U.S.C. 2605(5)(e).  I am requesting the following information relative to both of these loans:

1.  The monthly principal and interest payment, and any monthly escrow payment.

2.  The total unpaid interest and escrow balances due and owing as of May 1, 2007.

3.  For each payment received on the loan, the amount of the payment, the date received, how the payment was credited to principal, interest and any escrow, and the month to which the payment was applied.

4.  For all such payments, the amount, payment date, purpose, and recipient of all foreclosure expenses, late charges, NSF check charges, appraisal, and property insurance.

5.  The amount of any fees charged for inspecting/preservation, legal fees, and other expenses or costs that have been charged and/or assessed to Sherzer's account.

6.  The amount, payment date, purpose, and recipient of any escrow items, including but not limited to taxes, water and sewer charges, and forced placed or other insurance premiums that have been charged and/or assessed to Sherzer's account.

7.  A breakdown of any current escrow payment showing how it was calculated and the reasons for any increase or decrease since the loan was made.

8.  The balance of any suspense account and the reason why such funds were deposited in said account.

9.  The interest rates and other relevant Truth-in-Lending disclosures in reference to this loan.

We have sufficient documentation to ascertain that material violations of the federal Truth-in-Lending Act ("the TILA") occurred in this transaction.  Our review of all of the documents given to Sherzer in connection with this transaction has ascertained that Sherzer may have received copies of Notices of Right to Cancel only the larger loan which Sherzer was given.  Since there were two parties to whom two disclosures each were required in what was written as two transactions, there should have been a total of eight

Notices in their package. This failure to supply the Notices for both portions of the transaction to both parties constitutes a "material violation" of the TILA.

Further, Sherzer did not intend to enter into two loans, but instead requested one loan to refinance their previous two loans. The instant transaction, however, resulted in their receiving two loans. Since this was a single transaction which involved "loan splitting," Sherzer were entitled to disclosures which described the entire loan package. The failure to so provide constitutes another "material violation" of the TILA.

Moreover, the documents received by Sherzer include a TILA Disclosure Statement ("DS") and a Settlement Statement ("SS") which describe only the larger loan. Assuming arguendo that the loans could be written separately, they were entitled to ful TILA disclosures in connection with the smaller loan. None appear to have been given.

Finally, it appears that several charges imposed upon Sherzer in connection with this transaction should have been included as part of the Finance Charge disclosed to Sherzer in connection with the transaction, but were not. These charges include a charge of $3076.20 for title insurance, which exceeds the applicable "refinance rate," since Sherzer were refinancing a loan made in 2003, established by the applicable Manual of Title Insurance Rating Bureau of Pennsylvania by $461.70; an appraisal for which Sherzer appear to have been charged an excessive total amount of $825.00; a notary fee of $15, although state law, 57 P.S. section 167, restricts such charges to $2.00; various charges by Homestar totaling $112; and various charges by Landtech Abstract Co. totaling $419.50, in addition to its excessive title insurance and notary charges. In addition, Dana Capital Group received an otherwise undisclosed "yield spread premium" of $8820.00 in connection with this transaction, the effect of which on the transaction was not described. The failure to include all of these charges in the Finance Charge would constitute another "material violation" of the TILA. I also note that, without any documentation of the smaller loan, it is impossible to ascertain what charges were imposed in connection with the smaller loan and ascertain whether there was any duplication of charges in the two loans.

As a result of all of the foregoing, Sherzer assert, among other rights, a right to rescind both loans involved in this transaction, pursuant to 15 U.S.C. §1635 of TILA, which they hereby exercise. Therefore, you have twenty days from the date of receipt of this letter to terminate your security interests against the Home and to return all of the payments made to date by Sherzer to any of you or to any other entity in consideration for this loan.

However, if you do not proceed to satisfy the mortgage and return the payments, Sherzer may be relieved of their obligation to repay the loan, as well as having a claim for statutory damages for TILA violations for your failing to honor a valid rescission under the TILA, and possibly damages for other federal and state law violations, in addition

to your being compelled to terminate your security interests against the Home and return all of their payments.  Further, if you do not act favorably on this request, I may be obliged to file an action against you in a court of competent jurisdiction, in which we will contend that Sherzer can make a claim for all of the foregoing, plus obtain the costs and attorneys' fees expended in pursuit of this claim under the TILA.

Thank you for your consideration and your prompt reply.

Sincerely,

DAVID A. SCHOLL

Cc:  James P. McGarrity, Esq., 42 S. 15th St., Suite 1000, Philadelphia, PA.  19102
    C. Lauren G. Delehey, Esq., Reed Smith, Princeton Forrestal Center, 136 Main St., Suite 250, Princeton, NJ  08540-7839
    Gregory Javardian, Esq., 1310 Industrial Blvd., Suite 101, Southampton, PA.  18966
    Daniel R. & Geraldine Sherzer, 320 Rosemary Lane, Narberth, PA.  19072

# ReedSmith

Reed Smith LLP
Princeton Forrestal Village
136 Main Street - Suite 250
Princeton, NJ 08540-7839
609.987.0050
Fax 609.951.0824

C. Lauren Graham Delehey
Direct Phone: 609.524.2063
Email: ldelehey@reedsmith.com

July 3, 2007

*Via Fax and Regular Mail*
David A. Scholl, Esq.
Regional Bankruptcy Center of Southeastern PA
#6 St. Albans Avenue
Newtown Square, PA 19073

> **Re:   Daniel R. Sherzer and Geraldine Sherzer**
> **320 Rosemary Lane, Narbeth PA 19072**

Dear Mr. Scholl:

On behalf of HSBC Bank USA, as Trustee, please accept this response to your letter dated May 11, 2007, sent on behalf of Daniel R. Sherzer and Geraldine Sherzer.

In accordance with 15 U.S.C. §1641(f)(2), the owner of the Sherzers' first loan (Loan No. 1701108127) is HSBC Bank USA as Trustee, 425 Phillips Boulevard, Ewing, New Jersey 08618. The servicer on the loan is Opteum Financial Services. The telephone number for the servicer is (609) 883-3900 ext. 7015.

Daniel R. Sherzer and Geraldine Sherzer seek to rescind two loans made by Homestar Mortgage Services on August 26, 2004, based on alleged violations of the Truth in Lending Act. Regulation Z, 12 C.F.R §226.23 provides a consumer with the right to rescind until midnight of the third business day following consummation, delivery of the Notice of Right to Cancel, or delivery of all material disclosures, whichever occurs last. 12 C.F.R. §226.23(a)(3) " Material disclosures" are defined as "the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total payments, the payment schedule, and the disclosures and limitations referred to in Sec. 226.32 (c) and (d)." 12 C.F.R. §226.23, n. 48.

On August 26, 2004, Daniel R. Sherzer and Geraldine Sherzer signed the requisite Notices of Right to Cancel for both loans. In accordance with the Notice of Right to Cancel, the Sherzers had the right to cancel either or both of the loans by midnight of August 30, 2004. As you know, the Sherzers did not exercise their right to cancel either of the loans.

We have reviewed the relevant disclosures regarding both loans and have determined that the Sherzers have no right to rescind the first loan (Loan No. 1701108127), as there were no material violations of the TILA which would allow for an extended right of rescission. Pursuant to the Sherzers'

NEW YORK ♦ LONDON ♦ LOS ANGELES ♦ PARIS ♦ SAN FRANCISCO ♦ WASHINGTON, D.C. ♦ PHILADELPHIA ♦ PITTSBURGH ♦ OAKLAND

MUNICH ♦ PRINCETON ♦ FALLS CHURCH ♦ WILMINGTON ♦ NEWARK ♦ MIDLANDS, U.K. ♦ CENTURY CITY ♦ RICHMOND ♦ LEESBURG



David A. Scholl, Esq.
July 3, 2007
Page 2

**ReedSmith**

request, we will rescind the second loan (Loan No. 1701108128), and will forward a check payable to the Sherzers in the amount of $10,330.96.  Please advise if you are authorized to accept the check on behalf of the Sherzers.

Thank you for your time and attention to this matter.

Very truly yours,

C. Lauren Graham Delehey

cc:    James P. McGarrity, Esq.
       Kellie A. Lavery, Esq.

| Borrower(s) (called "I", "me" or "my") | Creditor (called "you") |
|---|---|
| GERALDINE SHERZER<br>DANIEL R SHERZER<br><br>320 ROSEMARY LANE<br>NARBERTH                          , PA 19072 | THE CIT GROUP/CONSUMER FINANCE, INC.<br>8000 SAGEMORE DR<br>SUITE 8202<br>MARLTON, NJ 08053 |

| ANNUAL PERCENTAGE RATE<br>The cost of my<br>credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the<br>credit will cost me. | Amount Financed<br>The amount of credit<br>provided to me or on my<br>behalf. | Total of Payments<br>The amount I will have paid<br>after I have made all payments<br>as scheduled. |
|---|---|---|---|
| 10.990            % | $    571,012.10 | $    235,391.50 | $    806,403.60 |

| My payment schedule<br>will be: | NO. OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE | |
|---|---|---|---|---|
| | 360 | $2,240.01 | Monthly, beginning | 10/01/05 |

**Security** - I am giving you a security interest in the real estate, including manufactured home, if any, located at:
320 ROSEMARY LANE, NARBERTH, PA 19072

**Insurance** - I may obtain property insurance from anyone I want that is acceptable to you.

**Prepayment** - If I pay off early, I may have to pay a penalty.

**Late Charge** - If a payment is more than 15 days late, I will pay you 5% of the late amount or $50, whichever is less.

See the contract documents for any additional information about nonpayment, default and any required repayment in full before the scheduled date.

☐ All numerical disclosures are estimates.

e means estimate

I acknowledge receipt of a completed copy of this Federal Disclosure Statement.

Borrower _~Geraldine Sherzer~_                          Date _8/26/05_
GERALDINE SHERZER

Borrower _~Daniel R Sherzer~_                          Date _8/26/05_
DANIEL R SHERZER

2-2343(6/99) Federal Disclosure - Fixed Rate Loan    - Prepayment Penalty
J847757    08/26/05 16:13

*Ex "F"*



<table>
<tr><td colspan="2">A.</td><td colspan="2">Settlement Statement</td></tr>
</table>

A.    **Settlement Statement**

U.S. Department of Housing and Urban Development

OMB No. 2502-0265 (expires 9/30/2006)

| B. TYPE OF LOAN | | |
|---|---|---|
| 1. ☐FHA    2. ☐FmHA    3. ☐Conv. Unins. | | |
| 4. ☐VA    5. ☐Conv. Ins. | | |
| 6. FILE NUMBER | 7. LOAN NUMBER | |
| GV-15115 | 9500843926 | |
| 8. MORTGAGE INSURANCE CASE NUMBER | | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals. WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

TitleExpress Settlement System
Printed 09/01/2005 at 10:27 RPM

| | |
|---|---|
| D. NAME OF BORROWER: | DANIEL R. SHERZER and GERALDINE SHERZER |
| ADDRESS: | 320 ROSEMARY LANE, Narberth, PA 19072 |
| E. NAME OF SELLER: | R E F I N A N C E |
| ADDRESS: | |
| F. NAME OF LENDER: | The CIT Group/Consumer Finance Inc. ISAOA |
| ADDRESS: | 8000 Sagemore Drive, Suite 8202, Marlton, NJ 08053 |
| G. PROPERTY ADDRESS: | 320 ROSEMARY LANE, Narberth, PA 19072 |
| | LOWER MERION TOWNSHIP |
| H: SETTLEMENT AGENT: | Great Valley Abstract, Telephone: 610-688-6360 Fax: 610-688-4179 |
| PLACE OF SETTLEMENT: | 121 N. Wayne Avenue, Wayne, PA 19087 |
| I. SETTLEMENT DATE: | 08/26/2005    DISBURSEMENT DATE:    08/31/2005 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 217,166.49 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 217,166.49 | 420. GROSS AMOUNT DUE TO SELLER | |
| 200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loans | 239,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BORROWER | 239,000.00 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | |
| 300. CASH AT SETTLEMENT FROM OR TO BORROWER | | 600. CASH AT SETTLEMENT TO OR FROM SELLER | |
| 301. Gross amount due from borrower (line 120) | 217,166.49 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 239,000.00 | 602. Less reduction amount due seller (line 520) | |
| 303. CASH TO BORROWER | 21,833.51 | 603. CASH TO SELLER | 0.00 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on line 401 above constitutes the Gross Proceeds of this transaction.

You are required by law to provide the settlement agent (Fed. Tax ID No: _____ ) with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

TIN: _____-____-_____ / _____-____-_____    SELLER(S) SIGNATURE(S): _____ / _____

SELLER(S) NEW MAILING ADDRESS: _____

SELLER(S) PHONE NUMBERS: _____ (H) _____ (W)

*Ex "G"*

SETTLEMENT STATEMENT

| L. SETTLEMENT CHARGES | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ = | | | | |
| Division of commission (line 700) as follows: | | | | |
| 701. $ | to | | | |
| 702. $ | to | | | |
| 703. Commission paid at Settlement | | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | |
| 801. Loan Origination Fee | % | | | |
| 802. Loan Discount | % | | | |
| 803. Appraisal Fee | to Thomas A. Duffy | | 300.00 | |
| 804. Credit Report | | | | |
| 805. Flood Certification Fee | to American Flood Data Services, Inc. | LR | 13.00 | |
| 806. Mortgage Application Fee | to Transamerica | LR | 49.00 | |
| 807. Mortgage Broker Fee | to Mercury Mortgage Partners | $2,353.91 POC by Lender | | |
| 808. Underwriting Fee | to The CIT Group/Consumer Finance Inc. ISAOA | LR | 695.00 | |
| 809. Appraisal Review Fee | to The CIT Group/Consumer Finance Inc. ISAOA | LR | 88.00 | |
| 810. Credit Bureau Fee | to The CIT Group/Consumer Finance Inc. ISAOA | LR | 17.50 | |
| 811. Mortgage Broker Fee | to Mercury Mortgage Partners | | 2,390.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | |
| 901. Interest From | to @$ /day | | | |
| 902. Mortgage Insurance Premium for | to | | | |
| 903. Hazard Insurance Premium for | to | | | |
| 904. | | | | |
| 905. | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER FOR** | | | | |
| 1001. Hazard Insurance | mo. @ $ /mo | | | |
| 1002. Mortgage Insurance | mo. @ $ /mo | | | |
| 1003. City Property Tax | mo. @ $ /mo | | | |
| 1004. County Property Tax | mo. @ $ /mo | | | |
| 1005. School Taxes | mo. @ $ /mo | | | |
| 1009. Aggregate Analysis Adjustment | | | 0.00 | 0.0 |
| **1100. TITLE CHARGES** | | | | |
| 1101. | | | | |
| 1102. | | | | |
| 1103. Title examination | | | | |
| 1104. Title insurance binder | | | | |
| 1105. Document Preparation | | | | |
| 1106. Notary Fees and Services | to Clerk | | 25.00 | |
| 1107. Attorney's fees | | | | |
| (Includes above items No: | ) | | | |
| 1108. Title Insurance | to Great Valley Abstract | | 1,118.70 | |
| (Includes above items No: | ) | | | |
| 1109. Lender's Policy | 239,000.00 · 1,118.70 | | | |
| 1110. Owner's Policy | | | | |
| 1111. End 100, End 300, End 900 | to Great Valley Abstract | | 150.00 | |
| 1112. Courier Fees | to Great Valley Abstract | | 31.00 | |
| 1113. ClosingSvcLtr | to Great Valley Abstract | | 35.00 | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | |
| 1201. Recording Fees Deed $ | ; Mortgage $ 135.00 ; Release $ | | 135.00 | |
| 1202. City/County tax/stamps | Deed $ ; Mortgage $ | | | |
| 1203. State Tax/stamps | Deed $ ; Mortgage $ | | | |
| 1204. | | | | |
| 1205. | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | |
| 1301. Survey | | | | |
| 1302. Pest Inspection | | | | |
| 1303. Payoff 4489-2981-6205-2881 | to National City Bank | | 201,981.68 | |
| 1304. Mers Registration Fee | to MERS | $3.95 POC by Lender | | |
| 1305. 2005 Twp. Tax | to Felix A. DiPrinzio, T.C. | | 1,901.00 | |
| 1306. 2005 County Tax | to Felix A. DiPrinzio, T.C. | | 1,343.00 | |
| 1307. 2005-06 School Taxes | to Felix A. DiPrinzio, T.C. | | 6,893.61 | |
| 1308. | | | | |
| **1400. TOTAL SETTLEMENT CHARGES** (enter on lines 103, Section J and 502, Section K) | | | 217,166.49 | |

HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____
DANIEL R. SHERZER
301225430

_____
GERALDINE SHERZER

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE TITLE 18: U.S. CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this trans I have caused or will cause the funds to be disbursed in accordance with this statement.

By: _____ Rebecca Mosser  8/24/05
                                          DATE

## NOTICE OF RIGHT TO CANCEL

### YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a mortgage, lien, or other security interest on your home. You have a legal right under federal or state law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____ August 26, 2005 _____ ; or
(2) the date you received your Truth in Lending disclosures; or
(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage, lien, or other security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage, lien, or other security interest on your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at

**THE CIT GROUP/CONSUMER FINANCE, INC.**
**8000 SAGEMORE DR**
**SUITE 8202**
**MARLTON, NJ 08053**

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of _____ August 30, 2005 _____ (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL

_____     _____
(Customer's Signature)                        (Date)

_____     _____
(Customer's Signature)                        (Date)

The undersigned each acknowledge receipt of two completed copies of this Notice of Right to Cancel.

_8/26/05_
(Date)

_____
GERALDINE SHERZER
(Applicant)

_____
DANIEL R SHERZER
(Co-applicant)

1847757   08/26/05   16:13
82-4012 (8/01) NEW LOANS

*Ex "H"*

# David A. Scholl

Counselors at law

Sent by Certified & Regular Mail

May 11, 2007

The CIT Group/Consumer Finance, Inc.
715 South Metropolitan Avenue
P.O. Box 24330
Oklahoma City, OK  73124-0330

The CIT Group/Consumer Finance, Inc.
8000 Sagamore Drive, Suite 8202
Marlton, NJ  08053

Re:  Daniel R. & Geraldine Sherzer, Account No. 00009500843926

Dear Sirs and/or Mesdames:

   I represent Daniel R. and Geraldine Sherzer (collectively, "Sherzer"), husband and wife who own by the entireties their home located at 320 Rosemary Lane, Narberth, PA. 19072 ("the Home").  Sherzer entered into a contract with your company on August 26, 2005, wherein they refinanced a second mortgage on the Home.  We note that you commenced a Mortgage Foreclosure Action in the Court of Common Pleas of Montgomery County, Pennsylvania relating to this loan, regarding which a petition to open a default judgment entered against Sherzer in error is pending.

   We have reviewed the entire package of documents given to Sherzer in connection with this transaction, but we want to make certain that we have all relevant documents and information regarding this loan.  Please consider this letter as, inter alia, a **qualified written request** under the Real Estate Settlement Procedures Act 12 U.S.C. 2605(5)(e).  I am requesting the following information relative to both of these loans:

1. The monthly principal and interest payment, and any monthly escrow payment.

2. The total unpaid interest and escrow balances due and owing as of May 1, 2007.

3. For each payment received on the loan, the amount of the payment, the date received, how the payment was credited to principal, interest and any escrow,

*Ex "I"*

and the month to which the payment was applied.

4. For all such payments, the amount, payment date, purpose, and recipient of all foreclosure expenses, late charges, NSF check charges, appraisal, and property insurance.

5. The amount of any fees for inspecting/preservation, legal fees, and other expenses or costs that have been charged and/or assessed to Sherzer's account.

6. The amount, payment date, purpose, and recipient of any escrow items, including but not limited to taxes, water and sewer charges, and forced placed or other insurance premiums that have been charged and/or assessed to Sherzer's account.

7. A breakdown of any current escrow payment showing how it was calculated and the reasons for any increase or decrease since the loan was made.

8. The balance of any suspense account and the reason why such funds were deposited in said account.

9. The interest rates and other relevant Truth-in-Lending disclosures in reference to this loan.

We have sufficient documentation to ascertain that material violations of the federal Truth-in-Lending Act ("the TILA") occurred in this transaction. Our review of all of the documents given to Sherzer in connection with this transaction has ascertained that Sherzer received only one copy of the Notice of Right to Cancel this transaction. Since there were two parties to whom two disclosures each were required, there should have been a total of four Notices in their package. This failure to supply the proper number of Notices constitutes a "material violation" of the TILA.

Further, it appears that several charges imposed upon Sherzer in connection with this transaction should have been included as part of the Finance Charge disclosed to Sherzer in connection with the transaction, but were not. These charges include a notary fee of $25, although state law, 57 P.S. section 167, restricts such charges to $2.00; various charges by your company totaling $800; various charges by Great Valley Abstract totaling $481.00; a "mortgage application fee" to an entity unknown to Sherzer identified as "Transamerica;" a "flood certification fee" to an entity unknown to Sherzer identified as "American Flood Data Services, Inc. In addition, Mercury Mortgage Partners, the broker in the transaction, not only charged Sherzer $2390 but also received a $2353.91 "Mortgage Broker Fee" paid by yopu, which was otherwise undisclosed, the effect of which on the

REGIONAL BANKRUPTCY CENTER OF SOUTHEASTERN PA
David A. Scholl, Esq., Chief Counsel & CEO
#6 ST. Albans Ave, Newtown SQ., PA 19073
610-353-7543  610-353-7542
www.judgescholl@redemptionlawcenter.com

transaction terms was not described.  The failure to include all of these charges in the Finance Charge would constitute another "material violation" of the TILA.

As a result of all of the foregoing, Sherzer assert, among other rights, a right to rescind both loans involved in this transaction, pursuant to 15 U.S.C. §1635 of TILA, which they hereby exercise.  Therefore, you have twenty days from the date of receipt of this letter to terminate your security interests against the Home and to return all of the payments made to date by Sherzer to any of you or to any other entity in consideration for this loan.

However, if you do not proceed to satisfy the mortgage and return the payments, Sherzer may be relieved of their obligation to repay the loan, as well as having a claim for statutory damages for TILA violations for your failing to honor a valid rescission under the TILA, and possibly damages for other federal and state law violations, in addition to your being compelled to terminate your security interests against the Home and return all of their payments.  Further, if you do not act favorably on this request, I may be obliged to file an action against you in a court of competent jurisdiction, in which we will contend that Sherzer can make a claim for all of the foregoing, plus obtain the costs and attorneys' fees expended in pursuit of this claim under the TILA.

Thank you for your consideration and your prompt reply.

Sincerely,

DAVID A. SCHOLL

Cc: James P. McGarrity, Esq., 42 S. 15th St., Suite 1000, Philadelphia, PA.  19102
     Mark J. Udren, Esq., Woodcrest Corporate Center, 111 Woodcrest Rd., Suite 200, Cherry Hill, NJ  08003-3620
     Daniel R. & Geraldine Sherzer, 320 Rosemary Lane, Narberth, PA.  19072

REGIONAL BANKRUPTCY CENTER OF SOUTHEASTERN PA
David A. Scholl, Esq., Chief Counsel & CEO
#6 ST. Albans Ave, Newtown SQ., PA 19073
610-353-7543  610-353-7542
www.judgescholl@redemptionlawcenter.com



## UDREN LAW OFFICES, P.C.
### WOODCREST CORPORATE CENTER
### 111 WOODCREST ROAD
### SUITE 200
### CHERRY HILL, NEW JERSEY 08003-3620
### 856.669.5400
### FAX: 856.669.5399

MARK J. UDREN*
STUART WINNEG**
GAYL SPIVAK***
HEIDI R. SPIVAK***
LORRAINE DOYLE**
MARISA JOY COHEN***
ALAN M. MINATO***
*ADMITTED NJ, PA, FL
**ADMITTED PA
***ADMITTED NJ, PA
TINA MARIE RICH
OFFICE ADMINISTRATOR

*FREDDIE MAC*
*PENNSYLVANIA*
*DESIGNATED COUNSEL*

PENNSYLVANIA OFFICE
215-568-9500
215-568-1141 FAX

*PLEASE RESPOND TO NEW JERSEY OFFICE*

September 7, 2007

David A. Scholl, Esquire
Regional Bankruptcy Center of Southeastern PA
6 St. Albans Avenue
Newtown Square, PA 19073

**VIA FACSIMILE (610-353-7542)**
**AND REGULAR MAIL**

Re:   Mortgage Electronic Registration Systems, Inc.
      vs.
      Daniel R. Sherzer and Geraldine Sherzer a/k/a Geraldine G. Sherzer
      Montgomery County C.C.P. No. 06-21565
      The CIT Group / Consumer Finance, Inc. Loan No. 00009500843926

Dear Mr. Scholl:

Please allow this letter to respond to your qualified written request and demand for rescission with regard to the above referenced mortgage loan.

With regard to your request for information:

1. The monthly principal and interest payment is $2,240.01. There is no monthly escrow component on this loan.

2. The total unpaid interest as of September 1, 2007, is $49,940.86. There is no escrow balance.

3. A contractual account history for the loan, including but not limited to all payments received and their application, NSF charges, and any payments made for foreclosure expenses, appraisals, and property inspections, is attached hereto.

4. A contractual account history for the loan, including but not limited to all payments received and their application, NSF charges, and any payments made for foreclosure

E:\WP51\FORECLOS\2006\06080235 respa reply.wpd pg.1

*Ex "J"*

### *UDREN LAW OFFICES, P.C.*

expenses, appraisals, and property inspections, is attached hereto.

5. See the attached account history.

6. There are no escrow items associated with this loan.

7. There is no escrow associated with this loan.

8. There is currently no suspense balance on this loan.

9. A copy of the TILA disclosure statement executed by the borrowers at the inception of the mortgage loan is attached hereto.

With regard to your demand for rescission, after reviewing the relevant loan closing documents, including all fees and costs associated with the loan, I have determined that there was no violation of the Truth in Lending Act or any other Federal or State law and/or act. And, if there was any violation, which it is specifically denied that any violation exists, it falls within the allowable margin for error as provided for under the TILA. With regard to the specific issue which you raise regarding payment to the broker as being "undisclosed," enclosed is a Mortgage Broker Fee Disclosure, signed by the borrowers, which clearly discloses all payments made or to be made to the broker.

Please advise immediately if you do not believe the information contained herein is fully responsive to your qualified written request and demand for rescission. If I do not hear from you to the contrary within 14 days of the date of this letter, I will assume that this letter is fully responsive to your request.

If you have any questions, or need any additional information, please do not hesitate to contact me.

Very truly yours,

Heidi R. Spivak, Esquire
UDREN LAW OFFICES, P.C.

HRS/
Enclosures

E:\WP51\FORECLOS\2006\06080235 respa reply.wpd pg.2