# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DANIEL R. SHERZER and
GERALDINE SHERZER
       Plaintiffs                       : CIVIL ACTION

v.

HOMESTAR MORTGAGE SERVICES,
HSBC BANK USA,
DANA CAPITAL GROUP, INC.
THE CIT GROUP/CONSUMER FINANCE, INC.
and MERCURY MORTGAGE PARTNERS
       Defendants                  : 07-CV-5040

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF HOMESTAR MORTGAGE SERVICES AND HSBC BANK USA TO DISMISS THIS ACTION AS TO THEM

### A. INTRODUCTION

       DANIEL R. SHERZER and GERALDINE SHERZER ("the Plaintiffs"), married adult individuals residing at 320 Rosemary Lane, Narberth, PA 19072 ("the Home"), filed this action on November 30, 2007, alleging, in Count One of the Complaint, violations of the federal Truth-in-Lending Act for wrongful refusals to the present and original lenders to honor their rescissions of two related loan transactions involving the refinancing of the Home, the former of which occurred on August 26, 2004 ("the 2004 Loan"), and the latter of which occurred exactly one year later on August 26, 2005 ("the 2005 Loan"). The original lender in the 2004 Loan was Defendant HOMESTAR MORTGAGE SERVICES ("Homestar") and the present holder of the mortgage is believed to be Defendant HSBC BANK USA ("HSBC"). The original lender and believed to remain the present holder of the 2005 Loan is Defendant THE CIT GROUP/CONSUMER FINANCE, INC. ("CIT"). In Counts Two and Three of the Complaint,

1

the Plaintiffs asserted principally claims against the respective broker involved in the 2004 Loan and the 2005 Loan, DANA CAPITAL GROUP, INC. ("Dana") and MERCURY MORTGAGE PARTNERS ("Mercury").

CIT answered the Complaint on December 31, 2007. Mercury filed a motion to dismiss the claims against it on January 29, 2008, which the Plaintiffs duly answered on February 11, 2008. On February 26, 2008, Homestar and HSBC ("the Movants") filed a motion to dismiss the Complaint as to them ("the MTD") which is addressed herein. To round out the picture, Dana has advised the Plaintiffs that it filed a bankruptcy case which stays proceedings against it. Since the Complaint addresses two separate transactions, and several parties as to each, and the instant motion involves only the Movants, it is appropriate to highlight the claims set forth in the Complaint which relate to the Movants in Count One of the Complaint, which state as follows:

5. The Plaintiffs entered into the original 2004 loan on August 26, 2004, with the intent of refinancing two previous loans held by Washington Mutual Bank and Greenpoint Mortgage into one loan.

6. In the course of communications to consummate the 2004 loan refinancing, the Plaintiffs fully informed DANA and Homestar, who knew or should have known of the status of the Plaintiffs' prior loans, of the existence and status of the Plaintiffs' outstanding loans and sent them certain documentation of their income and debt status. As is standard practice in the industry, the Plaintiffs prior mortgage originator had required the Plaintiffs to purchase title insurance on the Home as a condition of their previous loan, and this fact was known to employees of DANA, Homestar, and Landtech Abstract, Inc. ("Landtech"), the entity which is identified on the Settlement Statement as having purchased said insurance.

7. The settlement transpired when the Plaintiffs appeared at the offices of Landtech, the agent for which asked the Plaintiffs to sign a large number of documents the contents of which were not explained to them. To this affect, the Plaintiffs did not realize until after settlement that the loan documents which they signed obligated them to pay on two separate loans, the larger of which contains a variable interest rate feature, at interest rates and loan amounts far above which the Plaintiffs had been previously advised of and for which they had not been provided the disclosures and booklets identifying this variable rate and the computations relative to same which must be provided to borrowers in advance of settlement pursuant to 2 C.F.R. § 226.19(b).

8. Among the documents which the Plaintiffs received to memorialize the first, larger loan in this transaction were a Truth-in-Lending Disclosure Statement ("DS"), a Settlement Statement ("SS"), and Notices of Right to Cancel ("the Notices"), representing the larger and smaller of the two loans entered into by the Plaintiffs, copies of the aforementioned documents with respect to the larger first loan are attached hereto as Exhibits "A," "B," and "C," respectively.

9. A significant aspect of this transaction is that it was split into two loans. The Plaintiffs expected to receive one loan, as was indicated, secured by a mortgage and were not informed that the instant transaction would result in their receiving two loans. Since this was a single transaction which involved "loan splitting," the Plaintiffs were entitled to full TILA disclosures which described the entire loan package. However, these disclosures were also not provided.

10. Moreover, it appears that numerous charges imposed upon the Plaintiffs in connection with the 2004 loan transaction should have been included as part of the Finance Charge disclosed, but were not. Noteworthy is that the pertinent charges included a charge of $3076.20 for title insurance, which exceeds the applicable "refinance rate," as the Plaintiffs were refinancing loans made in 2003, established by the applicable Manual of Title Insurance Rating Bureau of Pennsylvania by $461.70. Therefore, the title insurance charges, or at least the excess charges, were not "reasonable in amount" and were required to be included in the "finance charge" disclosed in this transaction. Furthermore, the Plaintiffs were charged the exorbitant amount of $825.00 for an appraisal, a notary fee of $15.00 although state law, 57 P.S. § 167, restricts such charges to $2.00, various charges by Homestar totaling $112.00, and various charges by Landtech totaling $419.50. Additionally, another violation arises from the fact that DANA received not only compensation which is specifically itemized in the Settlement Statement from the second, smaller loan, but also received a fee paid by the lender of $8,820.00 which was otherwise undisclosed to the Plaintiffs. While this charge is characterized as being paid by the lender to the broker on the SS, it is identified as a Yield Spread Premium which is a charge used by those in the mortgage lending industry to disguise additional compensation paid indirectly by borrowers and received by a broker, as it is in actuality a kick-back that the broker receives for producing a borrower who will pay an interest rate higher then that which the borrowers would have qualified for, as the charge is indirectly paid for by the borrowers through their increased interest rate. Not only is this charge nefarious on its own, it was never mentioned to the Plaintiffs in their negotiations of Dana's charges for its services. When these and all other charges are analyzed, it is clear that charges properly characterized as part of the Finance Charge in this transaction have only been partially disclosed as such, if at all, which renders the disclosure of the Finance Charge and Annual Percentage Rate of the Finance Charge on the Truth-in-Lending Disclosure Statements which the Plaintiffs received erroneous, which are material violations of the TILA.

11. On or about May 11, 2007, having undertaken to represent the Plaintiffs, the undersigned forwarded a letter to HSBC and Homestar indicating that the Plaintiffs were exercising their right to rescind the loan agreements pursuant to material violations of the TILA, a copy of which is attached hereto as Exhibit "D." Moreover, this letter constituted a qualified written request ("QWR") under the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(5)(e) ("RESPA"), requesting certain information relative to the underlying loan.

12. After receiving various responses to the Plaintiffs rescission demand and QWR from counsel for HSBC, the Plaintiffs received the letter of July 3, 2007, a copy of which is attached hereto as Exhibit "E." In that letter, HSBC indicates that it will honor the Plaintiffs' demand to rescind the second smaller loan, but that the Plaintiffs' "have no right to rescind the first loan" thereafter denying the Plaintiffs' rescission demand.

In the Motion, the Movants argue as follows: (1) The Plaintiffs have released all claims against the Movants arising out of the one of the two portions into which the 2004 Loan was "split." This is true, but the claims set forth in the Complaint relate only to the remaining, larger portion of the 2004 Loan; (2) The Count One claim is not timely because this action was filed more than three years after the 2004 Loan took place and fails against HSBC because the TILA violations are not "apparent on their face." The timeliness argument lacks merit and a rescission claim against the holder, as is asserted against HSBC here, is not dependent on the whether the claim was apparent on its face. These issues will be addressed under Headnote C supra; (3) The Count Two and Three claims against the Movants lack merit. In response, the claims which are primarily against the brokers are confined to the brokers and are withdrawn against the Movants, and only the Count Three claim based on TILA violations will be prosecuted. The Count Three issue will be briefly discussed under Headnote D supra ; and (4) This court should abstain from hearing the claims against the Movants because similar claims are asserted against HSBC as defenses to a pending mortgage foreclosure action against the Plaintiffs. This contention has no merit, as is noted in a discussion under Headnote E supra.

### B. THE COMPLAINT CLEARLY SETS FORTH CLAIMS WHICH ENTITLE THE PLAINTIFFS TO RELIEF

The MTD is procedurally based upon Federal Rule of Civil Procedure ("FRCP") 12(b)(6). The decision in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007), as the Movants concede, requires only that plaintiffs plead facts which provide grounds which entitle them to relief. As the above recitation makes clear, the Plaintiffs have alleged ample facts which provide grounds for relief. They allege illegal "loan-splitting" in the 2004 transaction. They allege that various charges imposed upon them in the transaction constituted finance charges which were not disclosed as such. They allege a rescission of the loan within the requisite three-year period. 15 U.S.C. section 1635(f). And they allege a failure of the Movants to properly respond to that rescission demand. These allegations are very specific and they clearly set forth claims which entitle the Plaintiffs to relief. Therefore, the Complaint is in no sense deficient, and the Movants can hope to prevail only if they convince this court that the arguments which they present regarding limitations, abstention, and the claims set forth against them in Counts Two and Three have merit. However, except for some aspects of the Count Two and Three claims, these arguments have no merit at all.

### C. THE LIMITATIONS ARGUMENT OF THE DEFENDANTS FAILS TO ACKNOWLEDGE THAT THE PLAINTIFFS' RESCISSION DEMAND WAS MADE ON MAY 11, 2007, WELL WITHIN THE REQUISITE THREE-YEAR PERIOD, AND THERE IS NO REQUIREMENT THAT LIABILITY FOR RESCISSION CLAIMS DEPENDS ON WHETHER THE CLAIMS ARE FACIALLY APPARENT TO THE ASSIGNEE

The Movants' arguments regarding the timeliness of their claims and the basis of

5

their claims against HSBC, as assignee, can be answered in brief fashion. This is not an action seeking damages under the TILA for a disclosure violations in the loan transaction itself, which occurred on August 26, 2004. Rather, the Plaintiff seeks declaratory relief and statutory damages under the TILA against the Movants only on account of their failure to honor the Plaintiff's timely rescission of the loan, pursuant to the three-year period set forth in 15 U.S.C. section 1635(f), which occurred on May 11, 2007. It is therefore puzzling and totally incorrect for the Movants to state, as they do, that the Plaintiffs did not "request" rescission until they filed suit on November 30, 2007. The request for rescission was the demand for same. Numerous authorities support the principle that a refusal to honor a rightful rescission request in that transaction remains viable until at lease one year after the refusal of the lender to honor the rescission. See, e.g., Belini v. Washington Mutual Bank, FA, 412 F.3d 26 (1st Cir. 2005); Smith v. Fidelity Consumer Discount Co., 898 F.2d 896, 903 (3d Cir. 1990); Canty v. Equicredit Corp., 2003 WL 21243268, * 2 (E.D. Pa. May 8, 2003); and Aquino v. Public Finance Consumer Discount Co., 606 F.Supp. 504, 511 (E.D. Pa. 1985). There is, moreover, no deadline as to when an action to enforce the refusal to honor a valid, timely rescission need be filed. See In re DeShields, DeShields v. Eastern Savings Bank, Bankr. No. 05-15216, Adv. No. 05-313, slip op. at 11-16) (Bankr. E.D. Pa. Sept. 21, 2005) (copy attached hereto as Appendix "A"). Therefore, the Defendants' limitations argument may be quickly and quietly put to rest.

  Equally clear is the liability of HSBC for failing to honor the Plaintiffs' timely rescission. The TILA provides, at 15 U.S.C. section 1641(c), that "[a]ny consumer who has the right to rescind a transaction under [15 U.S.C. section 1635] may rescind the transaction as against any assignee of the obligation." The language of 15 U.S.C. section 1641(a) cited by the Movants relates only to disclosure violation claims against assignees. Again, the claims against

the Movants here are only for declaratory relief and statutory damages under the TILA against the Movants on account of their failure to honor the Plaintiffs' timely rescission of the loan.

### D. THE PLAINTIFFS WILL CONFINE THEIR COUNT TWO AND THREE CLAIMS AGAINST THE DEFENDANTS TO UNFAIR TRADE PRACTICE CLAIMS FOR VIOLATION OF THE TILA

The Plaintiffs are willing to withdraw their claims set forth in Counts Two and Three against the Movants which are arise under the Pennsylvania Credit Services Act and Unfair Trade Practices and Consumer Protection Law ("the UTPCPL") as a result of their claims against Dana, the broker in the 2004 Loan. However, they submit that their claims of violations of the TILA as to the Movants state claims ipso facto against the Movants. See In re Meyer, 379 B.R. 529, 554-55 (Bankr. E.D. Pa. 2007).

### E. THE PENDENCY OF A STATE COURT FORECLOSURE ACTION ON A MORTGAGE WHICH HAS BEEN VALIDLY RESCINDED UNDER THE TILA DOES NOT WARRANT INVOCATION OF THE "EXTRAORDINARY AND NARROW" ABSTENTION EXCEPTION FROM EXERCISE OF FEDERAL JURISDICTION

The Defendants cite Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976); Spring City Corp. v. American Buildings Co., 193 F.3d 165 (3d Cir. 1999); and Trent v. Dial Medical of Florida, Inc., 33 F.3d 217 (3d Cir. 1994), in support of an argument that this court should stay this action until the mortgage foreclosure action brought by HSBC against the Plaintiffs in state court is resolved. Respectfully, neither these authorities, nor any others, support the extraordinary relief in the nature of abstention which the Movants request. First, it must be noted that, subsequent to the decision in Colorado River, the Court held abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Moses H. Cone Memorial Hospital v. Mercury Construction

Corp., 460 U.S. 1, 14 (1983). Secondly, the court in Spring City refused to abstain, and indicated that Trent was limited by its subsequent decision in Ryan v. Johnson, 115 F. 3d 193, 197 (3d Cir. 1997), which emphasized the narrowness of the "abstention exception" articulated in Moses H. Cone. The criteria set forth in Spring City are (1) which court first assumed jurisdiction over a res or property; (2) relative inconvenience of the federal forum; (3) avoidance of piecemeal llitigation; (4) the order in which the respective courts assumed jurisdiction; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. 193 F.3d at 171.

The mortgage foreclosure action is an in rem proceeding, and this factor may jeopardize the rights of the Plaintiff to invoke federal jurisdiction. See New York Guardian Mortgage Corp. v. Dietzel, 362 Pa.Super. 426, 430-31, 524 A.2d 951, 953 (1987) (TILA defense cannot be asserted in a mortgage foreclosure action). There is no reason why the federal forum is more inconvenient to any parties. With respect to the piecemeal litigation consideration, it must be noted that this action references both the 2004 Loan and the 2005 Loan and references the linkage between the two, and includes claims against the brokers involved in both transactions. The state court mortgage foreclosure action involves only HSBC and the Plaintiffs and the 2004 Loan. It is therefore clear that relegating this action to the state court will create rather than avoid piecemeal litigation. Further, it is not clear whether the state court will hear the Plaintiffs' TILA defenses and could not hear the claims against Mercury and the other pendent UTPCPL claims. The Plaintiffs submit that the determination of the rescission issue should precede the foreclosure, as a finding in the Plaintiffs' favor on this issue would wipe out the mortgage and the foreclosure action with it. The foreclosure action was filed first, but does not appear to be proceeding quickly. The principal claims of the Plaintiffs are those under the federal TILA. There is, as was

said above, a significant danger that the CCP would decline to hear the federal TILA claims raised by the Plaintiff, and possibly would not entertain the UTPCPL claims, either. Therefore, almost every factor weighs against abstention, and the case law establishes that abstention is appropriate only if the factors weigh heavily in favor of abstention.

Practically, it is quite common that a foreclosure in state court runs parallel to a federal action to enforce a right to rescind that mortgage. The Plaintiff is aware of only one other case where lenders' counsel has so much as advanced the argument argued herein that the mortgagor should be relegated to the state court to argue the federal claims, and the court did not abstain in that case (Pavlovich v. Tribeca Lending Corp., C.A. No. 07-259 (E.D. Pa.)). Thus, this argument did not succeed in that case, before the Honorable J. William Ditter, and the Plaintiffs are unaware of any where it has. None are cited by the Movants. There is no apparent reason why this case should be a groundbreaker.

## F. CONCLUSION

The MTD should accordingly be denied on this and all other grounds asserted therein.

_____
DAVID A. SCHOLL
6 St. Albans Avenue
Newtown Square, PA 19073
(610)-353-7543
Attorney for Plaintiffs