IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL and GERALDINE SHERZER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| HOMESTAR MORTGAGE SERVICES, | : | |
| et al. | : | NO.  07-5040 |

## REPORT AND RECOMMENDATION

**ELIZABETH T. HEY**
**UNITED STATES MAGISTRATE JUDGE**                    **May 7, 2010**

In this case, Plaintiffs seek rescission of two mortgages they took out on their

home in 2004 and 2005, along with statutory and punitive damages, attorneys' fees and

costs.  Specifically, Plaintiffs allege violations of the Truth in Lending Act, 15 U.S.C.

§ 1601 et seq., ("TILA"), against the lenders, Homestar Mortgage ("Homestar"), HSBC

Bank ("HSBC"), and CIT Group ("CIT").   Additionally Plaintiffs contend that all the

defendants -- the lenders as well as the brokers, Dana Capital ("Dana"), and Mercury

Mortgage Partners ("Mercury") -- violated the Pennsylvania Credit Services Act, 73 Pa.

Stat. Ann. §§ 2181, et seq., ("CSA"), the Pennsylvania Loan Broker Trade Practices

Regulations, 27 Pa. Code §§ 305.1, et seq., ("LBTP"), and Pennsylvania's Unfair Trace

Practices and Consumer Protection Law, 73 P.S. §§ 201-1, et seq., ("UTPCPL"), and also

engaged in common law fraud and breached their fiduciary duties.  Homestar, HSBC, and

Mercury have filed motions to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6).

I.    **FACTUAL BACKGROUND**

The Complaint alleges the following facts.  In 2004, Plaintiffs sought to refinance by taking a single mortgage on their home in Lower Merion Township, Pennsylvania. Compl. at ¶ 5.  Dana acted as the broker for that transaction.  Id. at ¶ 4.  On August 26, 2004, Plaintiffs went to settlement.  Id.  Unbeknownst to Plaintiffs, they actually settled on two loans, both taken from Homestar and placed with HSBC.  Id. at ¶ 9; Exh. B to Complaint.  The first ("larger loan") was for $705,000, and the second ("smaller loan") was for $171,000.  N.T. 9/19/08 at 40.  On August 26, 2005, one year to the day from the original settlement, Plaintiffs refinanced the smaller loan, taking a mortgage on their home from CIT ("the 2005 loan").  Compl. at ¶¶ 13, 14.  That mortgage was arranged by Mercury.  Compl. at ¶ 4.  At some point between the settlements and May 11, 2007, both HSBC and CIT filed foreclosure actions in state court.  See Exhs. D and I to Complaint.[1]

On May 11, 2007, Plaintiffs, through counsel, sent a letter to Homestar and HSBC requesting rescission of both 2004 loans.  See Exh. D to Complaint.  In response, HSBC rescinded the smaller loan, which had already been satisfied by the refinancing, but found

---

[1]HSBC attached a copy of its Complaint in Mortgage Foreclosure filed in the Court of Common Pleas of Montgomery County.  It was filed on April 18, 2006.  See Exh. A to HSBC's Motion to Dismiss.  There is no evidence of the exact filing date of the CIT foreclosure action.

no basis to rescind the larger loan.  See Exh. E to Complaint.[2]  According to HSBC, at the time the smaller loan was rescinded Plaintiffs executed a general release, releasing all claims "which in any way relate to the loan [Homestar] made to [Plaintiffs] on August 26, 2004, in the principal amount of $171,350.00, Loan No. 1701108128 [the smaller loan]."  See Exh. D to HSBC's Motion to Dismiss at ¶ 2.  On May 11, 2007, Plaintiffs, through counsel, also sent a letter to CIT requesting rescission of the 2005 loan.  See Exh. I to Complaint.  CIT responded that it saw no basis to rescind the 2005 loan.  See Exh. J to Complaint.

On November 30, 2007, Plaintiffs filed this Complaint.  With respect to the 2004 transaction, Plaintiffs contend that the loan was improperly split into two loans.  Compl. at ¶¶ 9, 10, 15, 16.  With respect to both the 2004 and 2005 transactions, Plaintiffs claim that they were not given the proper documentation and that they were charged improper fees as part of the financing charges, including what Plaintiffs allege was a kickback to the mortgage broker known as a yield spread premium ("YSP").  Id. at ¶¶ 10, 15, 16.[3]

---

[2]"Rescission essentially restores the status quo ante; the creditor terminates its security interest and returns any monies paid by the debtor in exchange for the latter's return of all disbursed funds or property interests."  McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 421 (1st Cir. 2007) (citing 15 U.S.C. § 1635(b)).

[3]The Complaint is not a model of clarity, and subsequent representations by Plaintiffs' counsel have confused the issues further.  Plaintiffs seek rescission of the mortgages, statutory damages, attorneys' fees and costs based on various violations of TILA, and various state law claims based on disclosure violations.  See Compl. at Prayer for Relief, Count I; Counts II and III.  In response to the motion to dismiss filed by Homestar and HSBC, Plaintiffs' counsel clarifies that his clients are not seeking TILA damages based on disclosure violations.  Rather they seek "declaratory relief and statutory

On January 29, 2008, Mercury filed a motion to dismiss the Complaint, arguing

that as a mortgage broker, it is not subject to either the CSA or the LBTP.  On February

26, 2008, Homestar and HSBC filed a motion to dismiss or to stay the proceedings

pending the outcome of the state court foreclosure action.[4]  Plaintiffs have responded to

both motions, and the parties addressed the motions at a status conference before Judge

McLaughlin on September 19, 2008.  Judge McLaughlin has referred the motions to the

undersigned for a report and recommendation.  <u>See</u> Doc. 35.

## II.   <u>LEGAL STANDARD</u>

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)

tests the sufficiency of the complaint.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

Although Rule 8 of the Federal Rules of Civil Procedure requires only that the complaint

contain "a short and plain statement of the claim showing that the pleader is entitled to

relief" to "give the defendant fair notice of what the . . .  claim is and the grounds upon

which it rests," the Plaintiff must provide "more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  <u>Bell Atlantic Corp.</u>

---

damages under the TILA . . . only on account of their failure to honor the Plaintiff's [sic]
timely rescission of the loan."  Pls.' Resp. to Homestar Mot. at 6.  At a status conference
before the Honorable Mary McLaughlin, Plaintiffs' counsel withdrew all claims against
the lenders but for the "truth in lending rescission claims."  <u>N.T.</u> 9/19/08 at 50.  I
conclude from this that Plaintiffs have withdrawn their state law claims against the
lenders, but continue to seek rescission under TILA and damages and fees arising from
the lenders' failure to rescind the loans.

[4]Throughout this Report, I will refer to the former motion as Mercury's Motion
and the latter as Homestar's Motion.

v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2) and Conley, 355

U.S. at 47).  Similarly, "naked assertions devoid of further factual enhancement" will not

suffice.  Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550

U.S. at 555).

    In considering a motion to dismiss, a court must accept all well-pleaded facts as

true, but should disregard any legal conclusions.  See ALA, Inc. v. CCAIR, Inc., 29 F.3d

855, 859 (3d Cir. 1994) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).  The

court must then determine whether the facts alleged in the complaint are sufficient to

show that the plaintiff has a "plausible claim for relief."  Iqbal, 129 S.Ct. at 1950.  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Donnelly v. O'Malley & Langan, P.C., No. 09-3910, 2010 WL 925869 at *2 (3d Cir.

March 16, 2010) (quoting Iqbal, 129 S.Ct. at 1949).  In making this determination, courts

must accept as true any reasonable inferences that may be drawn from plaintiff's

allegations, and view those facts and inferences in the light most favorable to plaintiff.

See Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  The Third Circuit has

summarized the post-Twombly standard as follows:  "'[S]tating . . . a claim requires a

complaint with enough factual matter (taken as true) to suggest' the required element . . . .

This 'does not impose a probability requirement at the pleading stage,' but instead

'simply calls for enough facts to raise a reasonable expectation that discovery will reveal

5

evidence of' the necessary element." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008) (quoting <u>Twombly</u>, 550 U.S. at 556).  "Thus, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570).

## III.   DISCUSSION

### A.   Mercury's Motion

In Count II, Plaintiffs allege that all the defendants, including Mercury, violated Pennsylvania's CSA and LBTP Regulations.  Plaintiffs also allege that brokers Mercury and Dana engaged in common law fraud and violated their fiduciary duties.  In Count III, Plaintiffs allege that all the defendants violated the Pennsylvania UTPCPL.

Mercury seeks to dismiss Count II on the ground that it is not subject to either the CSA or the LBTP.  Mercury also moves to dismiss Counts II and III on the ground that the averments in the Complaint are insufficient to state a claim that Mercury engaged in fraud or violated the UTPCPL.

### 1.   CSA

The Pennsylvania legislature passed the CSA "to police the interactions between credit services organizations, retail sellers, and buyers, and to prevent false representation and misleading advertising aimed at potential debtors." <u>Morilus v. Countrywide Home Loans, Inc.</u>, No. 07-900, 2007 WL 1810676, at *5 (E.D. Pa. Jun. 20, 2007); <u>see also</u> <u>In re Lewis</u>, 290 B.R. 541, 555 (Bankr. E.D. Pa. 2003) (discussing purpose of CSA).  "The Act

is broadly construed to cover any untrue or deceptive statements made by a credit services organization prior to the execution of a mortgage." <u>Morilus</u>, 2007 WL 1810676, at *5. The CSA regulates the activities of credit services organizations and loan brokers.  <u>See</u> 73 P.S. §§ 2183 (listing prohibited acts of credit services organizations), 2188(c) (listing prohibited acts of loan brokers)**.**

In its motion Mercury argues that, as a mortgage broker, it is not liable under the CSA.  <u>See</u> Mercury's Memo. at 5-7.  Plaintiffs do not dispute that Mercury is a mortgage broker, but argue that a mortgage broker can be considered a credit services organization for purposes of the CSA.  <u>See</u> Pls.' Memo. at 3.[5]

The CSA defines a credit services organization as:

> (1) A person who, with respect to the extension of credit by others, sells, provides or performs or represents that he or she can or will sell, provide or perform any of the following services in return for the payment of money or other valuable consideration:
>> (i) Improving a buyer's credit record, history or rating.
>> (ii) Obtaining an extension of credit for a buyer.
>> (iii) Providing advice or assistance to a buyer with regard to either subparagraph (i) or (ii).

73 Pa. S.A. § 2182 (subdivision (1) of definition of "Credit services organization").  In the Complaint, Mercury is described as "the broker involved in the 2005 loan which

---

[5]Because Plaintiffs base their argument on Mercury's position as a credit services organization and I find this categorization dispositive, I do not address Mercury's argument that it is not a loan broker under the CSA.

refinanced the second mortgage," and Mercury's role is described as "arranging [the 2005] transaction[ ] to the detriment of the Plaintiffs, and the benefit of themselves, and misrepresenting the terms of this loan and its charges."  Compl. at ¶¶ 4, 26.  Based on these allegations, it appears that Mercury meets the definition of a credit services organization for purposes of the CSA, having obtained an extension of credit for Plaintiffs through CIT.

Mercury relies on one of the exclusions from the definition of a credit services organization in its argument to dismiss this count.  Specifically, the definition of a credit services organization excludes "[a]ny person organized, chartered or holding a license or authorization certificate to make loans or extensions of credit pursuant to the laws of the Commonwealth or the United States who is subject to regulation and supervision by an official or agency of the Commonwealth or the United States."  73 P.S. § 2182 (subdivision (2)(i) of definition of "Credit services organization").  In support of its argument, Mercury states that its principals are Pennsylvania licensed mortgage brokers and thereby fit within the exclusion.

Mercury's argument, while it may have merit at a later point in the case, is premature.  First, guided by the standard for considering a motion to dismiss, I must consider the allegations in the Complaint.  Those are sufficient to bring Mercury under the definition of a credit services organization.  The contrary factual assertions by Mercury play no role in the court's consideration at this stage.  Its argument is more

suited for a summary judgment motion, after evidence is presented to establish Mercury's nature and determine to what regulations it is subject.

In addition, the cases that have considered the question whether a mortgage broker is a credit services organization are not so clear as to justify a conclusion on a motion to dismiss. Compare Parker v. Long Beach Mortg. Co., 534 F.Supp. 2d 528, 537-38 (E.D. Pa. 2008) (holding after trial that licensed mortgage broker was excluded from definition of credit services organization) with In re Lewis, 290 B.R. 541, 555-56 (Bankr. E.D. Pa. 2003) (on motion for summary judgment, mortgage broker who assisted borrower in obtaining mortgage for compensation conceded that it was a credit service organization and did not assert the exclusion); In re Bell, 309 B.R. 139, 162 (Bankr. E.D. Pa. 2004) (holding after trial that by working to obtain an extension of credit for borrower in return for compensation, mortgage broker fell within the definition of a credit services organization, and defendant did not assert the exclusion). Mercury relies on In re Stuart, 367 B.R. 541 (Bankr. E.D. Pa. 2007), in which the court granted summary judgment on the CSA claim against the original mortgage holder and the assignee because neither was a credit services organization. Id. at 556. Mercury's reliance is inapposite because the movants in that case were lenders, not brokers, and plaintiff had not alleged that they were credit services organizations.[6]

---

[6]The mortgage broker in Stuart did not file a summary judgment motion. Stuart, 367 B.R. at 544.

Because I find that Mercury's argument is premature, I will recommend that

Mercury's motion to dismiss the CSA claim in Count II be denied.  Once discovery is

completed concerning Mercury's licensing and to what regulatory authority it is subject,

Mercury will have the opportunity to revisit this issue by way of summary judgment

motion.

> ### 2.   LBTP

Mercury also seeks to dismiss Plaintiffs' claim against it for violation of the LBTP

regulations.  The LBTP "establishes what are determined to be unfair methods of

competition and unfair or deceptive acts or practices by loan brokers."  37 Pa. Code

§ 305.1.  For purposes of the regulations, a loan broker is "[a] person, copartnership,

association or corporation engaged in providing services for the purpose of procuring or

attempting to procure a loan on behalf of a borrower where a fee or other valuable

consideration is charged for the services."  Id. § 305.2.  However, such an entity is not a

loan broker if it is "expressly regulated by a regulatory body or officer of this

Commonwealth or of the United States, such as State and nationally chartered banks,

savings and loan associations and their regulated subsidiaries."  Id.

Again, it appears from this definition and the Complaint allegations as to

Mercury's services in the 2005 transaction that Mercury would come within the definition

of a loan broker.  Further, Mercury's argument that it falls under the exception to the

definition of a loan broker is premature and is better suited for a summary judgment

motion after discovery has been completed.  As with the CSA claim, I will recommend

that the motion to dismiss the LBTP claim in Count II be denied.

### 3.    Fraud and UPTCPL

In its Motion to Dismiss, Mercury also contends that the Complaint fails to state a

cause of action against it for common law fraud (Count II) or violation of the UPTCPL

(Count III).[7]  In response, Plaintiffs challenge a fee paid by CIT, the lender, to Mercury,

characterized as a "Mortgage Broker Fee."  See Pls.' Compl. at ¶ 16, Resp. to Mercury

Mot. at 4-5.  Plaintiffs contend that the fee is actually a YSP, and argue that the failure to

properly characterize the fee constitutes fraud and violates the UTPCPL.

Before discussing the claim, it is necessary to understand what a YSP is.

> A "yield spread premium" is a bonus paid to a broker when it
> originates a loan at an interest rate higher than the minimum
> interest rate approved by the lender for a particular loan.  The
> lender then rewards the broker by paying it a percentage of
> the yield spread (*i.e.,* the difference between the interest rate
> specified by the lender and the actual interest rate set by the
> broker at the time of origination) multiplied by the amount of
> the loan.

Parker v. Long Beach Mortg. Co., 534 F.Supp. 2d 528, 536 (E.D. Pa. 2008); see also

Oscar v. Bank One, N.A., No. 05-5928, 2006 WL 401853, at *5 (E.D. Pa. Feb. 17, 2006).

Here, Plaintiffs do not deny that the fee was disclosed to them on the settlement sheet.

See Compl. at ¶ 16.  Rather, they contend that they were unaware of the purpose and

---

[7]To the extent Mercury bases its argument on the theory that it is not subject to the
CSA, I reject the argument at this point for the reasons already stated.

effect of the charge and contend that a YSP, by its nature, is fraudulent.  "There is a most unseemly aspect to the entire concept of a broker's receipt of compensation from the lender, in the nature of a bribe, to make the terms of the loan worse for the borrower which supports the policy of full disclosure, and also supports the UTPCPL claims set forth in the Complaint based upon these facts."  Pls.' Resp. to Mercury Mot. at 5.

Despite Plaintiffs' condemnation of the YSP, they have cited no case concluding that such a fee violates the UTPCPL or constitutes fraud, nor have I found any opinion directly addressing this contention.  The judges of this district have confronted the question whether a YSP violates TILA, and have concluded that, as long as the YSP was disclosed on the settlement statement as a broker's commission and the interest was disclosed on the disclosure statement, there was no TILA violation.  For example, in In re Meyer, 379 B.R. 529 (Bankr. E.D. Pa. 2007), Plaintiff argued that the failure to disclose the YSP violated TILA.  In granting summary judgment on the TILA claim, the Honorable Stephen Raslavich explained that "[a]lthough the yield spread premium serves to increase the rate of interest, a lender is not required to break down the components of the finance charge to disclose the separate existence of the yield spread premium as a component of the finance charge."  Id. at 544.

Similarly, in Escher v. Decision One Mortgage Company, 417 B.R. 245 (Bankr. E.D. Pa. 2009), the Honorable Timothy Savage concluded that a YSP did not violate TILA.

12

> [Plaintiffs] contend that a YSP is a reward by the lender to the
> broker for convincing a borrower to accept an interest rate
> higher than the best rate available to that borrower.  They
> state that no rational borrower would agree to a higher rate
> than the best rate available.  They argue that full disclosure of
> all compensation a mortgage broker receives should be
> included in the finance charge.
>
> Courts do not set policy.  Even though we may agree
> that the practice of a broker, whom the borrower trusts to get
> the best deal, does not inform the borrower that he can obtain
> a lower interest rate, defies transparency and implicates a
> conflict of interest, we cannot intrude upon the prerogatives
> of Congress and the Federal Reserve Board.

Id. at 251-52.  Despite finding that the YSP did not violate TILA, Judge Savage

questioned the propriety of a YSP.

> The opportunity to receive a yield spread premium
> commission from the lender creates a disincentive for the
> mortgage broker to obtain the best deal for his client, the
> borrower.  It is a scenario ripe for fraud and deceit.  An
> unscrupulous broker may take advantage of unsuspecting
> borrowers by failing to disclose to them that they can obtain a
> lower interest rate, and instead, sell them a higher interest rate
> for the broker's undisclosed financial advantage.

Id. at 252 n.3.

Thus, although it appears that the mere existence of a YSP does not violate TILA

so long as the fee is disclosed, it is not clear whether the existence of a YSP on the facts

alleged here would constitute fraud or violate the UTPCPL.  See In re Thomas, 2008 WL

5412113, at *9-10 (Bankr. E.D. Pa. Oct. 17, 2008) (breach of fiduciary duty survived

motion to dismiss based partially on the existence of a YSP).

13

"The UTPCPL protects consumers who suffer 'any ascertainable loss of money or property, real or personal' caused by fraudulent or deceptive conduct prohibited by the statute." <u>Sherk v. Countrywide Home Loans, Inc.</u>, No. 08-5969, 2009 WL 2412750, at *7 (E.D. Pa. Aug. 5, 2009) (quoting 73 Pa. C.S. § 201-9.2). "The statute lists twenty specified 'unfair methods of competition' and 'unfair or deceptive acts or practices,' and includes a catch-all provision proscribing 'any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.'" <u>Id.</u> (quoting 73 Pa. C.S. § 201-2(4)(i)-(xx) and (xxi)).

Here, Plaintiffs allege that they were deceived by the mischaracterization of the fee paid by CIT to Mercury.[8] "Deception . . . is defined as intentional misleading by falsehood spoken or acted . . . . An act or a practice is deceptive or unfair if it has the capacity or tendency to deceive." <u>Christopher v. First Mut. Corp.</u>, No. 05-1149, 2006 WL 166566, at *3 (E.D. Pa. Jan. 20, 2006) (citing <u>Commonwealth ex rel. Zimmerman v. Nickel</u>, 26 Pa. D. & C.3d 115, 120 (Pa. D. & C. 1983); <u>FTC v. Raladam Co.</u>, 316 U.S. 149, 152 (1942); <u>In re Patterson</u>, 263 B.R. 82, 94 (Bankr. E.D. Pa. 2001)) (internal citation omitted). Here, I conclude that the Plaintiffs' allegations regarding the

---

[8]Again, because the Plaintiffs' Complaint is not the model of clarity, it is unclear whether Plaintiffs are alleging that the misrepresentation regarding the broker's fee/YSP constituted fraud or merely deceptive conduct under the catch-all provision. Similarly, Mercury has not distinguished between the two. Nor has it complained that Plaintiffs have failed to meet the heightened pleading requirements of fraud.

mischaracterization of the fee is sufficient to plead a claim for violation of the UTPCPL.

Therefore, I will recommend that Mercury's Motion to Dismiss be denied.

**B.      Homestar's Motion**

Homestar and HSBC, the original lender on the 2004 mortgages and the entity to

which the mortgages were assigned, respectively, have also filed a motion to dismiss.

They argue that (1) the release signed by Plaintiffs when the smaller loan was rescinded

bars the claims against them, (2) the claim for rescission of the larger loan under TILA is

barred by the statute of repose, and (3) HSBC, as an assignee, has no liability under

TILA.  In the event their motion to dismiss is not granted in its entirety, they argue that

the federal action should be stayed pending disposition of the foreclosure actions in the

state court.

The Complaint alleges TILA violations against Homestar and HSBC in Count I,

violations of Pennsylvania's CSA and LBTP regulations in Count II, and violation of the

UTPCPL in Count III.  In their response to Homestar's motion and at the status

conference before Judge McLaughlin, counsel stated that Plaintiffs were pursuing only

the TILA rescission claims against the lenders and withdrew the state law claims against

the lenders.  N.T. 9/19/08 at 50-51, 76,  Pls.' Resp. to Homestar's Mot. at 6.  Therefore, to

the extent Homestar and HSBC seek dismissal of the state law claims, see Homestar

Memo. at 12-14, the motion should be granted as unopposed.  The remaining claims

involve TILA.  Although Plaintiffs' counsel has stated that Plaintiffs are not pursuing

damages based on disclosure violations, <u>see</u> Pls.' Resp. to Homestar Mot. at 6, based on the Complaint and counsel's representations in the response to Homestar's motion and at the status conference before Judge McLaughlin, Plaintiffs are seeking rescission of the loans and damages and fees based on the lenders' failure to grant rescission.

I previously undertook a brief examination of the state laws (CSA, LBTP, and UTPCPL) implicated in the Complaint.  <u>See</u> <u>supra</u> at 6-7, 10, 13-14.  Before addressing Homestar's motion, I will review the basic principles of TILA.

> TILA's purpose is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601.  Thus, TILA requires lenders to make specific disclosures to borrowers and provides a civil cause of action for violation of these disclosure requirements.

<u>Carmen v. Metrocities Mortg.</u>, No. 08-2729, 2010 WL 421115, at *4 (Bankr. D.N.J. Feb. 1, 2010) (Kugler, J.) (citing <u>Ramadan v. Chase Manhattan Corp.</u>, 156 F.3d 499, 500 (3d Cir. 1998)).  TILA also provides a three-year right of rescission if the rescission is based on the creditor's failure to provide information or forms.  <u>See</u> <u>Carmen</u>, 2010 WL 421115, at *6 (citing 15 U.S.C. § 1635(f)).

### 1.   <u>Release</u>

As previously mentioned, when the smaller loan was rescinded, Plaintiffs executed a release, which stated in part, "[Plaintiffs] release and give[] up any and all claims and rights which [Plaintiffs] may have against [Homestar and its assigns] from the beginning

16

of time through the date of this Release which in any way relate to the loan [Homestar] made to [Plaintiffs] on August 26, 2004, in the principal amount of $171,350.00, Loan No. 1701108128 [the smaller loan]."  Homestar and HSBC argue that this release bars all claims raised against them in the Complaint because all of the claims are based "in whole or in part" on the smaller loan.  Homestar Memo. at 9.  I conclude that, to the extent Plaintiffs' premise their TILA violation on the loan splitting, the motion to dismiss should be granted.  With respect to the other TILA violations, I conclude that the release does not bar the Plaintiffs' claims, and the motion should be denied.

One of the alleged TILA violations is loan splitting.  Plaintiffs allege that they expected to take out a single loan, but that the defendants improperly split that loan into the larger and smaller loans.  Although this created two loans, the single act of loan splitting cannot be broken into two separate legal events.  As a result, when Plaintiffs released all claims that "relate[d] to" the smaller loan, they released any claim they had of improper loan splitting.  Therefore, the court should grant Homestar's motion to dismiss to the extent loan splitting is the basis of a TILA violation.

However, loan splitting is only one basis for the requested rescission.  See Exh. D to Compl.  Other alleged TILA violations as to the larger loan include the failure to disclose several charges in the finance charge, the inclusion of a YSP,[9] overcharging for

---

[9]As previously explained the mere presence of a YSP does not constitute a TILA violation if it is properly disclosed.

title insurance, excessive charges for an appraisal and notary fee, and other various

charges.  Id.  Additionally, even though similar charges may have applied to both loans,

the two loans were considered separate in every way throughout the 2004 transaction,

which is evident by Homestar/HSBC's willingness to rescind the smaller but not the

larger loan.  Neither Homestar nor HSBC should be permitted to now claim that the two

loans were so intertwined as to make the payments or releases associated with one

applicable to the other.  Therefore, I conclude that, but for the loan splitting, the release of

the smaller loan does not release Homestar and HSBC from liability with respect to the

larger loan.

### 2.      Statute of Repose

With respect to the 2004 transaction, Plaintiffs contend that the documentation and

disclosure violations under TILA provide a basis for rescission.  Compl. at ¶¶ 21, 23, 24,

Prayer for Relief in Count I.[10]  Plaintiffs seek both rescission of the larger 2004 loan and

damages and fees resulting from the lenders' failure to rescind the loans after the

rescission notice was sent.  In their Motion to Dismiss, Homestar and HSBC argue that

the claim for rescission is barred by the three-year statute of repose.  See Homestar Mot.

at 10-11.  Plaintiffs respond that the notice of rescission was timely sent, and that they

---

[10] As previously discussed, to the extent the loan splitting provides the basis for a
TILA violation, the release of claims associated with the smaller loan releases any claims
relating to the loan splitting.

have a year from the time of the requested rescission to file suit for damages arising from the failure to honor such request.  Pls.' Resp. to Homestar Mot. at 6.

The right to rescind under TILA derives from 15 U.S.C. § 1635, which states that "the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction . . . by notifying the creditor, in accordance with regulations of the Board, of his intention to do so."  15 U.S.C. §§ 1635(a) & 1602(6) (defining "Board" as Board of Governors of the Federal Reserve System).  If, however, the lender fails to make the disclosures required by TILA, the "right of rescission shall expire three years after the date of consummation of the transaction."  15 U.S.C. § 1635(f).  This three-year period is a statute of repose, rather than a statute of limitations, meaning that the right is extinguished after the three-year period passes and is not subject to equitable tolling.  See Beach v. Ocwen Federal Bank, 523 U.S. 410, 419 (1998) (concluding that section 1635 was statute of repose; Ocasio v. Ocwen Loan Servicing, LLC, 2008 WL 2856392, at *3 (E.D. Pa. Jul. 23, 2008) (Bartle, C.J.) (section 1635 is statute of repose not subject to equitable tolling).

In this case, the larger loan was consummated on August 24, 2004.  Plaintiffs' counsel sent a notice of rescission to Homestar and HSBC on May 11, 2007, within three years of the transaction, but did not file suit until November 30, 2007, beyond the three year period.  Thus, the question is whether a rescission notice to the lender within three years is sufficient to trigger the right to rescission or whether the filing of suit within

three years is required.  The opinions from courts within our circuit are divided on the answer.

The Honorable Jean FitzSimon of our bankruptcy court recently conducted a thorough analysis of the relevant caselaw in In re Thomas, No. 07-16445, 2008 WL 5412113 (Bankr. E.D. Pa. Oct. 17, 2008).  In Thomas, as in this case, the debtor had sent a written notice of rescission within three years of the loan's consummation, but suit was not filed until after the expiry of the three year period.  Specifically, the loan was consummated in 2002 and the rescission notice was sent in 2003, but the adversary proceeding claiming rescission was not filed until 2008.  Judge FitzSimon granted the lender's motion to dismiss, concluding that the TILA rescission claim was untimely because suit had not been filed within the three year period.  Id. at *8.

While acknowledging a minority of lower court cases to the contrary, Judge FitzSimon relied heavily on the Third Circuit's decision in Smith v. Fidelity Consumer Disc. Co., 898 F.2d 896 (3d Cir. 1990).  In Smith, the Third Circuit concluded that the plaintiffs TILA rescission claim was timely filed, noting that "a borrower has three years after the date of consummation of the transaction within which to bring an action for rescission."  Id. at 903 (emphasis added).  In Smith, however, the plaintiffs had both sent a rescission notice and filed suit within the three-year period.  Hence, the Circuit Court did not have to determine, and did not discuss, if the timely notice was sufficient to satisfy the three-year requirement of section 1635(f).

Judge FitzSimon also noted in <u>Thomas</u> that the Third Circuit reaffirmed <u>Smith</u> in

<u>In re Community Bank of Northern Virginia</u>, 418 F.3d 277 (3d Cir. 2005).  In overturning

the District Court's approval of a group of class settlements involving TILA violations,

the Third Circuit mentioned in passing that "an action for rescission must be brought

within three years." <u>Id.</u> at 305 (citing <u>Smith</u>).  Like <u>Smith</u>, the court was not faced with a

rescission notice sent within the three year period with suit filed after the three years had

expired.

Similarly, many of the lower court decisions that Judge FitzSimon cites in <u>Thomas</u>

did not involve a timely notice of rescission with an untimely suit.  <u>See</u> <u>Jefferies v.</u>

<u>Ameriquest Mortg. Co.</u>, 543 F. Supp. 2d 368, 383 (E.D. Pa. 2008) (rescissory period

could not be extended to three years due to misrepresentations); <u>Christopher v. First Mut.</u>

<u>Corp.</u>, Nos. 05-115, 05-1149, 2007 WL 2972561, at *6 (E.D. Pa. Oct. 9, 2007) (no notice

of rescission and suit filed beyond three-year period); <u>Steele v. Chase Manhattan Mortg.</u>

<u>Corp.</u>, No. 04-217, 2005 WL 2077271, at *2 (E.D. Pa. Aug. 26, 2005) (both notice and

filing were within three years).  In both <u>Kamara v. Michael Funding, LLC.</u>, 379 F.

Supp.2d 631, 634 (D. Del. 2005), and <u>Nix v. Option One Mortg. Corp.</u>, No. 05-3685,

2006 WL 166451 (D.N.J. Jan. 19, 2001), there was an alleged rescission within the

original three day period, but suit was not filed within three years of that rescission notice,

and the courts found the rescission claim untimely.

21

In contrast, only two of the cases cited by Judge FitzSimon involved a notice of rescission that was sent prior to the expiration of TILA's three-year period but where suit was not filed until after its expiration, and thus had to confront the critical question whether timely notice is sufficient.  In both, the court found that TILA required only that the notice of rescission be sent prior to the expiration of the three-year period.  See Johnson v. Chase Manhattan Bank, USA N.A., No. 07-526, 2007 WL 2033833, at *4 (E.D. Pa. Jul. 11, 2007); Jackson v. CIT Group, No. 06-543, 2006 WL 3098767, at *2 (W.D. Pa. Oct. 30, 2006); see also In re West, 420 B.R. 284, 288 (Bankr. W.D. Pa. Nov. 19, 2009) (accepting for sake of argument that adversary proceeding in bankruptcy could constitute notice for § 1635(f)).  In particular, I find the discussion of the Honorable Terrence McVerry in Jackson most persuasive.

> The statute clearly states that rescission is accomplished "by notifying the creditor, in accordance with regulations of the Board, of his intention to do so."  15 U.S.C. § 1635(a).  Regulation Z, 12 C.F.R. § 226.23(a)(2) clearly provides: "To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication."

Jackson, 2006 WL 3098767, at 2.  Judge McVerry relied directly on the language of the statue and associated regulation to determine that timely notice of rescission was called for rather than suit.

As noted by Judge McVerry, section 1635(a) states, in reference to the three-day period, that rescission is effected by notice in accordance with regulations.  Section

1635(f) then states that "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction . . . ."  15 U.S.C. § 1635(f).  Subpart "a" of the relevant Federal Reserve regulation is entitled "Consumer's right to rescind," and states, "[t]o exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication."  12 C.F.R. § 226.23(a)(2).  The regulation goes on to state that "the right to rescind shall expire 3 years after consummation" if "the required notice or material disclosures are not delivered."  Id. § 226.23(a)(3).  Read together, subsections (a)(2) and (a)(3) state that the right to rescind, "by mail, telegram, or other means of written communication," is extended to three years in the event notice or certain disclosures are not made.  Id. §§ 226.23(a)(2) and (3).  Thus, neither the statute nor the regulation requires the filing of suit within the time period, and neither differentiates between the notice required to invoke rescission within the three-day or the three-year period.  Accordingly, if written notice is sufficient to rescind within three days, it is sufficient to rescind within three years if, in fact, the three-year period is applicable.  I find Judge McVerry's reasoning sound and conclude that written notice within the three year period is sufficient to timely exercise the right to rescind.

The question then becomes how long the debtor has after sending the notice of rescission to file suit.  Although section 1635(f) sets a three-year repose period on the right to rescind, once the debtor has sent notice of rescission pursuant to section 1635(f) and regulation section 226.23(a)(2), neither the statute nor the regulation states when suit

23

for rescission must be filed.  Several courts to have confronted this issue, guided by the statute of limitations for filing a claim for damages arising from the failure to rescind, have adopted a one-year statute of limitations.  See In re Hunter, 400 B.R. 651, 660-61 (Bankr. N.D. Ill. 2009) (suit for rescission to be filed within one year of the time the lender failed to respond to rescission notice); Santos v. Countrywide Home Loans, No. 09-912, 2009 WL 2500710, at *4-5 (E.D. Cal. Aug. 14, 2009) (discussing limitations period).  These courts have opined that the lenders' failure to rescind is a separate TILA violation, accruing when the creditor fails to timely respond to the debtor's rescission notice.  See Hunter, 400 B.R. at 661 (noting separate TILA violation and applying one-year statute of limitations); see also Johnson v. Long Beach Mortg. Loan Trust, 451 F. Supp. 2d 16, 39 (D.D.C. 2006) (claim for failure to effectuate rescission accrues when creditor refuses to rescind or 20 days after it receives rescission notice, whichever is earlier).

Here, Plaintiffs sought to rescind the loan by letter dated May 11, 2007.  See Exh. D to Compl.  The statute requires the lender to respond within twenty days of receipt of the rescission notice.  15 U.S.C. § 1635(b).  HSBC responded in a letter dated July 3, 2007.[11]  Plaintiffs then filed suit on November 30, 2007.  Whether calculated from the date they sent the rescission notice, the date a response was required, or the date when a response was sent, suit was filed within the one-year statute of limitations.  Therefore, I

---

[11]Whether this was a timely response is irrelevant to my consideration.

24

will recommend that Homestar's motion be denied with respect to the claim for rescission of the larger loan.

Plaintiffs also seek damages "on account of [Homestar's and HSBC's] failure to honor the Plaintiff's timely rescission of the loan." Pls.' Resp. to Homestar's Mot. at 6. Such a claim is unquestionably subject to a one year statute of limitations, which begins to run on the date by which the lender was required to respond to the notice of rescission. Thomas, 2008 WL 5412113, at *7 n.5 (citing 15 U.S.C. § 1640(e); Lavelle v. M&T Mortg. Corp., 2006 WL 2346320, at *3 (E.D. Pa. Aug. 11, 2006)). As just noted, the suit was filed within one year of that date and the motion to dismiss should therefore be denied.

### 3.   HSBC's Liability as an Assignee

As previously noted, Plaintiffs seek rescission of the larger 2004 loan based on alleged disclosure TILA violations, and seek statutory damages and attorney's fees based on the failure to rescind.[12]   In the motion to dismiss, HSBC challenges its liability as a "mere assignee." See Homestar Mot. at 11-12.[13]

---

[12]Plaintiffs also seem to allege a similar violation of TILA based on CIT's failure to rescind the 2005 loan. However, CIT has not filed a motion to dismiss and I therefore do not address the adequacy of the claims against CIT.

[13]HSBC argues that an assignee is only liable for violations which are "apparent on the face of the disclosure statement." See Homestar Mot. at 11-12 (quoting 15 U.S.C. § 1641(a)). To the extent Plaintiffs originally sought damages for violations of TILA based on errors or misrepresentations in the disclosures, HSBC is correct that the statute provides liability for assignees only to the extent the violation of TILA is "apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a). However, Plaintiffs' counsel has

The right to rescission under TILA is unaffected by the assignment of the loan. See 15 U.S.C. § 1641(c) ("Any consumer who has the right to rescind a transaction under section 1635 . . . may rescind the transaction as against any assignee of the obligation.") Therefore, HSBC is not entitled to dismissal of the claim for rescission.

In contrast, TILA does not provide for statutory damages or attorney's fees against an assignee. Section 1640(a) provides for civil liability for any "creditor" who fails to comply with the requirements of TILA. 15 U.S.C. § 1640(a). The term "creditor" does not include an assignee.

> The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(f).

In Siner v. American General Finance, Inc., No. 03-6247, 2004 WL 1535774 (E.D. Pa. Jul. 8, 2004), the plaintiff brought a claim for statutory damages and attorneys' fees against the assignee of his mortgage based on the defendant's failure to respond to his rescission of the loan. The Honorable Legrome Davis granted a motion to dismiss the

---

clarified that his clients do not seek damages for the disclosure violations.

plaintiff's claim finding that TILA does not provide for such damages against an

assignee.

> Although Plaintiff may assert a valid claim for rescission
> against [defendant] _if_ he can prove a material violation of
> [TILA's] requirements by the original lender, "the language
> of the statute does not permit an award of statutory damages
> or attorney's fees against an assignee for failure to respond to
> a valid rescission notice." Kane v. Equity One, Inc., Civ. A.
> No. 03-3931, 2003 WL 22939377, at *6 (E.D. Pa. Nov. 21,
> 2003) (citing Brodo v. Bankers Trust Co., 847 F. Supp. 353,
> 356 (E.D. Pa. 1994) ("Congress did not wish to impose
> liability for damages and attorney's fees on an assignee who
> was not responsible for and who had not [sic] notice of TILA
> disclosure violations at the time of an assignment."). The
> TILA's civil liability provision only permits "creditor[s]" to
> be held liable for a monetary penalty or award of attorney's
> fees for a violation of the Act. See 15 U.S.C. § 1640(a); see
> also Kane, 2003 WL 22939377, at *6; Brodo, 847 F. Supp. at
> 359. It does not "provide [ ] for a statutory penalty or award
> of attorney's fees against an assignee for failure to respond to
> a valid rescission notice." Kane, 2003 WL 22939377, at *6
> (citing Brodo, 847 F. Supp. at 359). Therefore, the Court
> must dismiss Plaintiff's claim against [defendant] for
> statutory damages and attorney's fees.

Siner, 2004 WL 1535774, at *1 (emphasis in original).

For these same reasons, I recommend that HSBC's motion to dismiss be granted to

the extent Plaintiffs seek statutory damages and attorneys' fees for HSBC's failure to

rescind the larger loan.

### 4.   **Abstention Under Colorado River**

Finally, in the event the court does not dismiss the action, Homestar and HSBC

argue that abstention is warranted and that the federal court should stay these proceedings

pending resolution of the foreclosure proceeding in the state court pursuant to Colorado

River Water Conservation District v. United States, 424 U.S. 800, 817 (1976).[14]   "[W]hen

parallel litigation is pending in both state and federal courts, abstention may be

appropriate under Colorado River, owing to considerations of 'wise judicial

administration, giving regard to conservation of judicial resources and comprehensive

disposition of litigation.'"   In re Best, 417 B.R. 259, 275 (Bankr. E.D. Pa. 2009).   The

Supreme Court cautioned in Colorado River, however, that federal courts have a

"virtually unflagging obligation . . . to exercise the jurisdiction given them."   Colorado

River, 424 U.S. at 817.   The subsequent cases have reiterated that abstention under

Colorado River requires "exceptional circumstances."   Spring City Corp. v. American

Bldgs. Co., 193 F.3d 165, 172 (3d Cir. 1999).

Before proceeding to address the factors discussed in Colorado River, I must first

determine whether the state foreclosure action and this federal action are "parallel."

Proceedings are parallel for these purposes if they "involve the same parties and

'substantially identical' claims, raising 'nearly identical allegations and issues.'"   St. Clair

---

[14]Although their argument is entitled "abstention," Homestar requests a stay of the
federal proceedings.   Several courts having addressed abstention under Colorado River
have concluded that the proper remedy is a stay of the federal proceedings.   See Pieleanu
v. Mortg. Elec. Registration Sys., Inc., 08-7404, 2010 WL 1251445, at *4 (N.D. Ill. Mar.
24, 2010) (citing Lumen Constr., Inc. v. Brant Constr. Co., Inc., 780 F.2d 691, 697-98
(7th Cir.1985)) (stay is appropriate remedy for Colorado River abstention).

v. Wertzberger, 637 F. Supp.2d 251, 255 (D.N.J. 2009) (quoting IFC Interconsult, AG v. Safeguard Int'l Partners, LLC., 438 F.3d 298, 306 (3d Cir. 2006)); see also Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 307 (3d Cir. 2009); Yang v. Tsui, 416 F.3d 199, 204 n. 5 (3d Cir. 2005).

Here, in HSBC's foreclosure action in the Montgomery County Court of Common Pleas, the Sherzers filed a counterclaim against HSBC alleging, among other things, damages for the lenders' breach of TILA. See Exh. B to Homestar's Motion at ¶ 20. In the federal action, the Sherzers seek rescission based on the lenders' failure to abide by the letter of rescission sent pursuant to TILA. These claims are similar, but they are not identical. Moreover, the federal action involves additional parties and claims. HSBC is the only defendant to the counterclaim in the state proceeding, whereas Plaintiffs have also sued other lenders (Homestar and CIT) and brokers (Dana and Mercury) in the federal action. The claims against these parties arising from the mortgage transactions are not part of the state action. Thus, the two actions are not "parallel" actions for purposes of Colorado River.

In addition, the factors considered in determining Colorado River abstention do not weigh heavily in favor of abstention. Colorado River requires the court to determine (1) which court first assumed jurisdiction over the property, (2) whether the federal forum is inconvenient, (3) the desirability of avoiding piecemeal litigation, (4) the order in which the jurisdiction was obtained, (5) whether state or federal law controls, and

(6) whether the state court will adequately protect the interests of the parties.  See Spring City, 193 F.3d at 171.  "No one factor is determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required."  Colorado River, 424 U.S. at 818-19.

Although the first and fourth factors favor abstention because the state court has jurisdiction over the property and the state action was filed first, the remaining factors do not favor abstention.  Both the federal and state forums are convenient, and there is a risk of piecemeal litigation if the foreclosure action proceeds first because the other parties and claims in the federal action will remain after the foreclosure action is decided.  Also, Plaintiffs' claims involve both federal and state law, and Homestar and HSBC have failed to show that any interests would best be served by the state court.

Finally, and most importantly, I find that there are no exceptional circumstances to require abstention.  In Colorado River, the court relied on the importance of water rights to the southwest to justify abstention.  In Spring City, the Third Circuit found that the avoidance of piecemeal litigation did not constitute exceptional circumstances to justify abstention in a breach of contract case.  Spring City, 193 F.3d at 172-73; see also Minsec Cos. v. Philadelphia, No. 09-3396, 2010 WL 996504, at *4 (E.D. Pa. Mar. 18, 2010) (refusing to abstain in discrimination case involving Fair Housing Act while underlying challenge to zoning board decision was on appeal in state courts).  But see St. Clair v. Werzberger, 637 F. Supp. 2d 251 (D.N.J. 2009) (TILA case dismissed under Colorado

River in light of concurrent foreclosure proceeding but without discussion of exceptional circumstances); Pieleanu, 2010 WL 1251445, at *4 (Colorado River abstention appropriate when identical fraud and consumer protection claims brought in both state and federal court).[15]

---

[15]Although resolution of the state court foreclosure action could force the federal court to abstain from deciding the rescission claims based on the Rooker-Feldman doctrine, the Third Circuit has made clear that this is not a basis for abstention.  "The general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action." Univ. of Maryland v. Peat Marwick Main & Co., 923 F.2d 265, 275-76 (3d Cir. 1991).

Therefore, I make the following:

## R E C O M M E N D A T I O N

AND NOW, this      7th              day of    May           , 2010, IT IS

RESPECTFULLY RECOMMENDED that Mercury's Motion to Dismiss be DENIED.

IT IS FURTHER RECOMMENDED that Homestar and HSBC's Motion to

Dismiss be GRANTED IN PART and DENIED IN PART, and its request for abstention

be DENIED.  To the extent Homestar and HSBC seek dismissal of the state law claims,

and based upon the representation of Plaintiffs' counsel in responding to the motion and

at the oral argument that Plaintiffs are pursuing only violation of TILA, the Motion

should be GRANTED AS UNOPPOSED.  To the extent HSBC seeks dismissal of the

claim for TILA damages and fees for failure to rescind, the motion should be

GRANTED.  To the extent Homestar and HSBC seek dismissal of the TILA claims based

on loan splitting, the motion should be GRANTED.  In all other respects the motion

should be DENIED.

The parties may file objections to this Report and Recommendation.  See

Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any

appellate rights.

/S/ELIZABETH T. HEY

_____

ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE

32

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DANIEL and GERALDINE SHERZER CIVIL ACTION

HOMESTAR MORTGAGE SERVICES

**REPORT AND RECOMMENDATION**

**UNITED STATES MAGISTRATE JUDGE May 7, 2010**

In this case, Plaintiffs seek rescission of two mortgages they took out on their home in 2004 and 2005, along with statutory and punitive damages, attorneys' fees and costs. Specifically, Plaintiffs allege violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA") against the defendants Homestar Mortgage Services ("Homestar"), HSBC Bank ("HSBC") and CIT Group ("CIT"). Additionally, Plaintiffs contend that all the defendants -- the three noted above and Delta Capital ("Delta") and Mercury Mortgage Partners ("Mercury") -- violated the Pennsylvania Credit Services Act, 73 Pa. Stat. Ann. § 2181 et seq. ("CSA"), and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1 et seq. ("UTPCPL"). Mercury has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).